THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* CHESTER NOWAK, Defendant-Appellant.

First District (5th Division)    No. 78-1581

Opinion filed August 31, 1979.

Whelan, Truschke & Associates, P.C., of Arlington Heights (James R. Truschke, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Linda Dale Woloshin, and Kathleen M. McGury, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE LORENZ delivered the opinion of the court:

Following a bench trial defendant was convicted of battery (Ill. Rev. Stat. 1977, ch. 38, par. 12—3) and sentenced to a term of one year supervision, fined $240 and assessed court costs of $10. On appeal, he contends that (1) he was not proved guilty beyond a reasonable doubt; (2) the trial court prevented introduction of relevant evidence to show motive and bias of the complaining witness and his family; and (3) the trial court erroneously precluded the defense from showing that the complaining witness' father had offered to terminate the charges for the payment of $300.

The incident in question occurred about 3:30 p.m. on January 25, 1978, in a northwestern suburb of Chicago. Defendant lived across the street from complaining witness and his family.

The complaining witness, Todd Monasterio, age 10, testified that he and Robert Alfonso were playing with some warning lights on a barricade near a hole in the street. As they left and began to walk to Robert's house, Todd touched a bush on defendant's property but did not break it. Defendant approached and asked Todd where he lived. At the same time he grabbed Todd from behind by the hair. Defendant walked him to the bush and asked him if he had broken it. Defendant hit him on the face with an open hand and while still holding him by the hair, took him to a

group of broken bushes. When Todd denied breaking those bushes, defendant struck him on the head. After Todd denied breaking still another bush, defendant again hit him.

Todd further testified that, after being hit, he called to Robert Alfonso and they went to the latter's home where Robert's mother wiped away blood from his nose and upper lip.

On cross-examination, Todd testified that defendant had treated him about 5 years ago for an eye condition. However, a State objection was sustained as to whether Todd knew what defendant told his parents about the eye condition approximately 4 years prior. Todd admitted that he broke a reflector from the safety barricade before defendant stopped him. He denied, however, that he jumped on several bushes on defendant's property and that he was stopped by defendant from jumping on other shrubbery. He also testified that, after leaving defendant, he fell in the snow in attempt to catch his friend. He further denied that he had no blood on his face when he stood up.

Robert Alfonso, who also was 10 years old, confirmed that he and Todd were walking down the street near the defendant's house when Todd touched a bush. Robert testified that when defendant called Todd over, Robert walked a short distance away because he was scared. He turned and saw defendant strike Todd. Todd called him and then ran toward him. Todd's nose was bloody. He and Todd went to his home where Robert's mother later treated Todd.

Rick Monasterio testified that he is Todd's brother; that on the day of the incident he gave his brother permission to go to Robert Alfonso's house, where he later picked him up after receiving a telephone call. Later he went to defendant's home at about 4 p.m. and spoke to defendant near the front door. Defendant admitted to him initially that he hit Todd. He told defendant that he should have spoken to Todd's parents and that defendant might now be in trouble. Defendant then said that he did not hit Todd but indicated that Todd had fallen to the ground.

On cross-examination, Rick testified that defendant had previously treated members of Todd's family. He also stated that on the day of the incident, defendant told him that Todd had previously broken several of defendant's bushes and showed him the shrubbery. Defendant also showed him where Todd had fallen in the snow. No blood was discernible in the snow.

The defendant called Richard Monasterio, Todd's father, as a witness. Monasterio testified that Todd had been defendant's patient 5 years ago and had diagnosed his son's condition as "lazy eye." Although defendant suggested that Todd do eye exercises, Todd stopped taking treatments from defendant. Monasterio denied that he knew or had knowledge that 3 years before the incident in question Todd purportedly

spray painted defendant's house and stated that he did not see any spray paint marks on that structure at that time. He denied defense counsel's suggestion that a neighbor named Mr. Stein had, in fact, seen Todd spray paint defendant's home. He further denied knowing any neighbor by that name. He admitted, however, that there was a college student named David, who lived nearby, but denied David told him that he saw Todd spray-paint defendant's residence or that he was ever advised that Todd pulled out a newly planted tree from defendant's front lawn more than 2 years before the incident.

Upon defense counsel's inquiry, Monasterio referred to an incident which occurred about a year before involving Rick Monasterio's car. Todd had apparently released the emergency brake, causing the car to roll down the driveway, across the street and onto a portion of defendant's lawn. Because the ground was soft from a recent rainfall, some tire marks were left on the grass. Monasterio denied that a tree was destroyed or that the car even came close to defendant's garage. He testified further that he offered to repair the damage to the grass but defendant said to forget the matter. When the trial court sustained the State's objection to the question of whether Monasterio had threatened defendant, defense counsel withdrew the question. On further direct examination, Monasterio testified that he had spoken to defendant in the hallway of a suburban police station after the incident. He denied advising defendant that, unless he received a payment of $300, he would have defendant prosecuted.

An objection by the State was sustained to a question of whether he later contacted defendant's attorney and reiterated his demand for the payment. Defense counsel then informed the trial court that attempts had been made to "extort" money from defendant under threat of prosecution as well as threats concerning his medical license. Counsel also stated that he had informed the State's Attorney's office of the matter. The trial court, however, would not modify its ruling prohibiting further questioning in this regard.

Defendant testified that he was an ophthalmologist. On the date in question he went to the window to look outside and saw Todd and his friend come across the street toward the house. Todd jumped on a safety barricade near a hole in the street and broke a reflector. Because of prior damage to his shrubbery, defendant decided to go outside. As Todd's friend went down the street, Todd got up on a stone on defendant's property and jumped on one of the bushes. Defendant proceeded toward Todd, who appeared ready to jump on another bush, and placed his hand on Todd's shoulder. He did not strike Todd or pull his hair. Defendant stated that he decided to speak to Todd's parents about the matter.

Defendant spoke briefly with Todd and obtained his promise not to

break any more bushes. Todd then left and walked toward his friend. Defendant then saw Todd fall in the snow. When Todd got up, he did not seem injured, and there was no blood on his face or the snow.

On direct examination, an attempt was made to question defendant on his prior doctor-patient relationship with Todd, acts of vandalism allegedly committed by Todd on his property, threats allegedly made to him by Todd's father, and conversations purportedly occurring with Todd's father after the incident. The State's objections to these questions were sustained, but defense counsel did not seek to make an offer of proof concerning the substance of defendant's testimony regarding these matters.

On cross-examination, defendant admitted that he had a conversation with Todd's brother on the day of the occurrence. However, he denied telling the brother that he hit Todd.

Defendant's wife testified that she witnessed the incident in front of her house. She substantially corroborated her husband's testimony.

Robert Friedman was an Assistant State's Attorney, who became involved in the case prior to the filing of the complaint against defendant. He testified that he was not present at a conference when any request was made to drop the charge. However, he was present at a meeting with the parties concerning an "offer of compromise" in which there was mention of a $300 payment.

The trial court sustained an objection to questions about a conversation Friedman allegedly had with defense counsel in which the latter informed Friedman that Todd's father had demanded a payment of $300. Defense counsel then stated that in his opinion he acted properly to prevent an extortion. The trial court indicated that defense counsel had acted properly in reporting the matter but that such consideration was irrelevant to the matter at bar.

OPINION

Defendant first contends that he was not proven guilty beyond a reasonable doubt.

Our supreme court has stated that "we will not reverse a criminal conviction unless the evidence is so improbable as to raise a reasonable doubt of guilt." (*People v. Stringer* (1972), 52 Ill. 2d 564, 568, 289 N.E.2d 631, 634.) We will not, however, substitute our judgment for that of the trier of fact who heard the evidence and observed the demeanor of the witnesses. (*People v. Barksdale* (1977), 44 Ill. App. 3d 770, 358 N.E.2d 1150.) It is clearly "the function of the trier of fact to determine the credibility of witnesses, the weight to be given to their testimony and the inferences to be drawn from the evidence." *People v. Akis* (1976), 63 Ill. 2d 296, 298, 347 N.E.2d 733, 734.

Here, the State and the defense presented irreconcilably conflicting accounts concerning the alleged battery. Todd Monasterio, the complaining witness, testified that defendant struck him in the head three times. Robert Alfonso, companion of the complaining witness, left the scene when defendant approached Todd, but he looked back and saw defendant strike Todd "across the head." Robert stated that, as a result, Todd "had a bloody nose." Defendant denied striking Todd. He stated that he merely placed a hand on Todd's shoulder to prevent Todd from jumping on a bush. Defendant's wife corroborated defendant's version, stating that she did not observe defendant strike Todd. Only these four witnesses testified as to the actual occurrence. The trial court, after listening to the testimony in the context of the entire trial and observing the demeanor of the witnesses, obviously chose to accept the version offered by the State and reject that offered by defendant. Where the evidence is, as here, irreconcilably conflicting, it is the function of the trier of fact to ascertain the truth. (*People v. Hammond* (1970), 45 Ill. 2d 269, 259 N.E.2d 44.) In such a case we will not substitute our judgment for that of the trier of fact. (*People v. Clark* (1964), 30 Ill. 2d 216, 195 N.E.2d 631.) The testimony of the State's witnesses is certainly not unbelievable, and we see no reason to overturn the trial court's finding of guilt.

Defendant next contends that the trial court unduly restricted his rights to cross-examine Todd Monasterio and Rick Monasterio, Todd's brother, concerning defendant's medical treatment of Todd approximately 5 years prior to the alleged battery. Specifically, he refers to the trial court's refusal to allow him to inquire as to whether Todd knew what defendant "told your parents about your eye condition" and as to whether Rick Monasterio knew whether defendant had treated Todd.

■■ ■ Although it is true that a witness may be impeached on cross-examination by a showing of interest, bias or motive which might influence his testimony (*People v. Barr* (1972), 51 Ill. 2d 50, 280 N.E.2d 708), the trial court is vested with a wide discretion in the matter of cross-examination and only a clear abuse of discretion will warrant our interference. (*People v. Curtis* (1970), 123 Ill. App. 2d 384, 259 N.E.2d 397.) Evidence showing bias, however, must be direct and positive rather than remote or uncertain. (*People v. Hanks* (1974), 17 Ill. App. 3d 633, 307 N.E.2d 638.) Here, the treatment referred to was remote and its relevance uncertain. It is not apparent that defense counsel indicated the basis for his line of questioning nor did he make any offer of proof as to the competency, relevancy or materiality of the testimony sought to be elicited. (See *People v. Curtis* (1970), 123 Ill. App. 2d 384, 259 N.E.2d 397; *People v. Caldwell* (1965), 62 Ill. App. 2d 279, 210 N.E.2d 556.) After carefully reviewing those portions of the record wherein defendant

478

alleges improper restriction, we find no abuse of discretion in the limitations on cross-examination imposed by the trial court.

■ Defendant further contends that the trial court erred in preventing him from testifying on direct examination regarding: (1) his past relationship with the Monasterio family; (2) Todd's alleged prior vandalism; and (3) an alleged offer from Richard Monasterio, Todd's father, to have the prosecution halted in return for payment of $300. However, defendant again failed to make an offer of proof as to the substance of the proposed testimony. An offer of proof and a ruling thereon is clearly necessary in order to preserve for review the question of whether evidence was wrongfully excluded. (*People v. Jones* (1970), 121 Ill. App. 2d 268, 257 N.E.2d 514.) Accordingly, defendant has failed to preserve this issue for our review.

■■ Defendant finally contends that he was improperly limited in his attempt to impeach Richard Monasterio on direct examination. He refers to questions concerning Todd's alleged prior vandalism, the medical treatment rendered to Todd, and the alleged settlement offer. Initially, we note that a party who calls a witness to testify cannot, as defendant here attempted, directly impeach that witness. (*People v. Ellis* (1976), 41 Ill. App. 3d 377, 354 N.E.2d 369.) Moreover, contrary to defendant's assertions, the witness actually did answer questions concerning his knowledge of any alleged vandalism to defendant's home, medical treatment rendered to Todd and the alleged offer to settle the matter for $300. The witness explicitly denied demanding payment of money.

For the foregoing reasons, the judgment of the circuit court is affirmed.

Affirmed.

SULLIVAN, P. J., and MEJDA, J., concur.