THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* RICKY STEVENSON *et al.*, Defendants-Appellants.

First District (4th Division)    Nos. 79-745, 79-759 cons.

Opinion filed November 20, 1980.

Ralph Ruebner and Patricia Unsinn, both of State Appellate Defender's Office, of Chicago, for appellants.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Myra J. Brown, and Mark A. Graf, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE JIGANTI delivered the opinion of the court:

The defendants, Ricky Stevenson and Alfred Avery, were tried in the circuit court of Cook County on the charges of attempt arson and attempt

aggravated arson. Following a bench trial, both defendants were convicted. Stevenson was sentenced to eight years' imprisonment, and Avery was sentenced to four years' imprisonment. Defendant Stevenson appeals his conviction and sentence, claiming that: (1) he was denied a fair trial as a result of the trial court's failure to sever, *sua sponte*, Stevenson's trial from that of his codefendant; or, alternatively, that he was denied the effective assistance of counsel when his attorney failed to request a severance; (2) an insufficient foundation was laid for the admission of expert testimony and exhibits; (3) he was deprived of his rights of confrontation and cross-examination when he was not permitted to cross-examine his codefendant Avery regarding Avery's interest, bias or motive to falsely accuse Stevenson; (4) his sentence is excessive because no reasonable basis exists for the disparity between the sentence imposed on Stevenson and that imposed on his codefendant; and (5) he was improperly convicted of both attempt aggravated arson and attempt arson, which is a lesser included offense. Defendant Avery appeals his conviction, alleging that the State failed to sustain its burden of establishing his guilt beyond a reasonable doubt.

On February 3, 1978, Officers Tribble and Muse were on routine patrol when they observed two men standing near the doorway of a tavern. One man was emptying a can of liquid onto the doorway; the other appeared to be striking matches. When the officers approached the men, one ran and the other, later identified as defendant Avery, stopped and was apprehended. Tribble began to chase the suspect who fled. When he realized that he could not catch the suspect, Tribble sent out two flash messages.

Officers Herr and Gordon were on patrol in the area and heard the flash messages about a suspect wanted in connection with an attempted arson. They went to the scene and received a description of the suspect, who was reported as wearing a long black coat and a reddish-colored stocking cap. The officers proceeded to patrol the area and found a man who fit the general description standing at a bus stop. The man voluntarily accompanied the officers to the scene, where Muse stated that he was not the suspect. On their way to return this man to the bus stop, Herr saw a man in an alley removing his coat. Herr was initially unsure of the man's identity, but later identified him as defendant Stevenson. When Herr ran toward the defendant, the defendant placed a bundle of clothes behind a garbage can, ran a few steps, then stopped. The officers arrested defendant Stevenson and recovered the bundle, which included a long black coat, a brown and rust stocking cap and two pair of gloves. Defendant Stevenson was returned to the scene, where he was identified by Officer Muse as the wanted suspect.

Herr placed the bundle of clothes in a plastic bag. His partner,

Gordon, took the bag to the police station and inventoried the contents. An inventory slip shows that it was then sent by police mail to the laboratory for analysis. At trial, Herr identified the coat, cap and gloves as the articles he recovered from defendant Stevenson. He testified that when he recovered the coat, it smelled strongly of a flammable substance, and that it still had the same odor on the day of trial.

Officer Moran, an evidence technician, arrived at the scene shortly after the defendants were arrested. He recovered a partially filled can of charcoal lighter and took samples of fluid from the doorway and ground in front of the tavern. Moran also found a partially filled book of matches, an empty matchbook and three burnt matches.

Frank Sanders, the owner of the tavern, testified at trial that defendant Stevenson engaged in a "scuffle" at the tavern a few hours before the alleged offense. Sanders knew both defendants and had seen them together on several occasions. He further testified that defendant Avery was not in the tavern on the night of the incident.

Cleo Winters, a tenant in the building in which the tavern was located, testified that he was decorating his apartment at the time the alleged offense occurred. An unusual noise caused him to look out of his window, and he saw two men standing in the doorway of the building. He watched the men walk to the tavern entrance, where one of them turned the corner and was lost from Winters' view. A police car arrived, and Winters saw the man who turned the corner run from the scene. At this point, Winters recognized the man as defendant Stevenson. He was able to identify the other man as defendant Avery. Winters testified that he had known both defendants for a few years. Winters also testified that earlier that morning he heard angry voices coming from the street near the tavern. He looked out of his window and recognized defendant Stevenson.

William Tyrrell testified as an expert witness in the area of chemical analysis. Tyrrell stated that on February 6, 1978, three days after the alleged offense, he performed tests on a coat, cap and gloves given to him by the chief chemist. Tyrrell testified that certain documents indicated that these items had been sent by police mail. He identified in court the items he had tested and stated that the tests showed the presence of charcoal lighter on the items. The coat, cap and gloves were admitted into evidence over defendant Stevenson's objections.

Defendant Avery testified that on the morning of February 3, 1978, he was coming home from a party when he saw defendant Stevenson in an alley near the tavern. Stevenson told Avery that he had had a fight with some people in the tavern. Stevenson then produced a can from under his coat and began to pour liquid on the tavern door. Defendant Avery testified that he tried to dissuade Stevenson from burning the building.

During his cross-examination of Avery, Stevenson attempted to elicit testimony concerning the preliminary hearing. When the State objected, Stevenson's attorney stated, "Judge, I think I can go in to show motive of this defendant's testimony." The trial judge heard further arguments on the issue, then sustained the objection.

■■ Defendant Stevenson first contends that the trial court erred when it failed to sever, *sua sponte*, Stevenson's trial from that of his codefendant. Stevenson argues that his defense was so antagonistic to that of defendant Avery that he would be unable to obtain a fair trial without a severance. While it is true that a severance should be granted where codefendants present antagonistic defenses (*People v. Davis* (1976), 43 Ill. App. 3d 603, 357 N.E.2d 96), the general rule is that a defendant who requests a severance must demonstrate prior to trial how he would be prejudiced by a joint trial (*People v. Miner* (1977), 46 Ill. App. 3d 273, 360 N.E.2d 1141). Defendant Stevenson argues that even though he failed to request a severance, the trial court was obliged to sever the trials *sua sponte*. He cites *People v. Wheeler* (1970), 121 Ill. App. 2d 337, 257 N.E.2d 587, as support for this argument. In *Wheeler*, however, the State's Attorney informed the trial court about a month before trial that the testimony of one defendant would incriminate the other. Here, the trial court was not informed prior to trial that Avery's testimony would inculpate Stevenson and therefore had no basis on which to grant a severance.

■■ In *People v. Precup* (1977), 50 Ill. App. 3d 23, 365 N.E.2d 1007, *aff'd* (1978), 73 Ill. 2d 7, 382 N.E.2d 227, the defendant cited *People v. Wheeler* (1970), 121 Ill. App. 2d 337, 257 N.E.2d 587, as authority for his argument that the trial judge was required to order a severance *sua sponte* where testimony at trial revealed a statement by one defendant which may have incriminated his codefendant. The court refused to recognize any such requirement and distinguished *Wheeler* as follows:

"We have found no other case in which the duty of the trial court to sever was framed in terms of a *sua sponte* requirement. It is to be noted that, in *Wheeler*, the fact of antagonistic positions in the context of one defendant implicating the other was made known to the court prior to the trial. In such context *Wheeler* is not authority directed to the question of a *sua sponte* severance by the court after the trial has begun and progresses substantially." (50 Ill. App. 3d 23, 28, 365 N.E.2d 1007, 1010.)

We believe that since the trial court had no knowledge that Avery and Stevenson would present antagonistic defenses until Avery testified at trial, it was under no duty to order a severance *sua sponte*.

Defendant Stevenson next contends that he was denied his right to effective assistance of counsel because his attorney failed to request a severance. Stevenson claims that the failure to move for separate trials

can be attributed only to neglect and lack of preparation on the part of his defense counsel. The standard to be applied in determining whether privately retained counsel is so incompetent as to deprive the defendant of a fair trial appears to be uncertain. In *People v. Edmonds* (1979), 79 Ill. App. 3d 33, 398 N.E.2d 230, the court discussed the question of whether the competency of retained counsel should be judged by the "farce or sham" test or by the stricter test enunciated in *People v. Morris* (1954), 3 Ill. 2d 437, 121 N.E.2d 810. Under *Morris*, a defendant must show "(1) actual incompetency of counsel, as reflected by the manner of carrying out his duties as a trial attorney; and (2) substantial prejudice resulting therefrom, without which the outcome would probably have been different." (3 Ill. 2d 437, 449, 121 N.E.2d 810, 817.) The court in *Edmonds* decided to apply the "farce or sham" test in evaluating the competency of the defendant's retained counsel.

■■ We find it unnecessary to address the question of which of these two standards applies because defendant Stevenson has failed to meet either test. At a minimum, the defendant must be able to show that he was prejudiced by the actions of his attorney. *(People v. Morris* (1954), 3 Ill. 2d 437, 121 N.E.2d 810.) Defendant Stevenson argues that as a result of the joint trial, the court heard defendant Avery's testimony placing Stevenson at the scene. However, since Stevenson was identified by several other witnesses, we fail to see how Avery's testimony caused substantial prejudice to defendant Stevenson. Because the attorney's failure did not result in substantial prejudice to the defendant, we do not believe that he was denied the effective assistance of counsel.

■■■ The defendant further argues that the court erred in admitting into evidence a coat, cap and gloves as well as expert testimony concerning those items because the State failed to establish a proper chain of custody. The law is well established, however, that a chain of custody is required only where the object sought to be admitted has no distinguishing characteristics. Where the object is readily identifiable, a foundation may be laid either through the establishment of a chain of possession *or* through identification by a witness. *(People v. Greer* (1963), 28 Ill. 2d 107, 190 N.E.2d 742; *People v. Jarosiewicz* (1977), 55 Ill. App. 3d 1057, 371 N.E.2d 949.) It appears that the clothing in the instant case was readily identifiable, especially since Herr testified at trial that the coat still smelled of a flammable substance, an odor which he recognized as being present when he first recovered the coat. Therefore, Herr's identification of the clothing as that which he recovered from defendant Stevenson provided a sufficient foundation for its admission into evidence.

■■ Defendant Stevenson also argues that the State failed to lay a proper foundation for the expert testimony of William Tyrrell, the chemist who performed tests on the coat, cap and gloves. Stevenson claims that the

State failed to establish that the clothing remained in the same condition from the time it was recovered by Herr until the time it was tested by Tyrrell. We believe the record shows that the State took ample precautions against the possibility of tampering or substitution. After recovering the items of clothing, Herr placed them in a plastic bag and gave them to his partner, Gordon. Gordon carried the bag to the police station and inventoried its contents. An inventory slip shows that it was then sent by police mail to the laboratory for analysis. At the laboratory, the items were given to Tyrrell by the chief chemist. Tyrrell testified that certain papers indicated that the items had been sent by police mail. He then performed tests which showed the presence of charcoal lighter on the items. The State is required only to show a reasonable probability that the items remained substantially unchanged; it does not have to exclude every possibility of tampering. (*People v. Madden* (1978), 57 Ill. App. 3d 107, 372 N.E.2d 851.) We believe that the State has met this burden, and that the expert testimony was properly admitted.

Defendant Stevenson next contends that the trial court erred by not permitting Stevenson to cross-examine his codefendant Avery concerning matters which occurred at the preliminary hearing. Stevenson claims that because Avery had been bound over to the grand jury while Stevenson had not, Avery was motivated to falsely accuse Stevenson.

It has been held that the right to reasonable cross-examination is essential to a fair trial. (*Alford v. United States* (1931), 282 U.S. 687, 75 L. Ed. 624, 51 S. Ct. 218.) However, the manner and scope of cross-examination is largely within the discretion of the trial court, and only a clear abuse of that discretion will warrant interference by a reviewing court. (*People v. Nowak* (1979), 76 Ill. App. 3d 472, 395 N.E.2d 28.) In *Nowak* the court rejected the argument that the trial court abused its discretion by restricting the defendant's cross-examination of a witness. It based this decision on the proposition that "[e]vidence showing bias * * * must be direct and positive rather than remote and uncertain." 76 Ill. App. 3d 472, 477, 395 N.E.2d 28, 31.

■■ Under the foregoing principles, we cannot say that the trial court's refusal to allow defendant Stevenson to cross-examine Avery regarding the preliminary hearing constituted a clear abuse of discretion. Even if Stevenson could show that Avery knew Stevenson had been discharged at the preliminary hearing, the effect of this evidence in showing motive or bias is uncertain at best. We therefore conclude that the trial court did not err by limiting the scope of cross-examination.

■■ Defendant Stevenson further claims that his sentence of eight years' imprisonment is excessive because no reasonable basis exists for the four year disparity between Stevenson's sentence and that of his codefendant Avery. Stevenson was sentenced under the new Sentencing Act. (Ill. Rev.

Stat., 1977 Supp., ch. 38, par. 1005—1—1 *et seq.*) Under the new Act, there is a rebuttable presumption that the sentence imposed by the trial judge is proper. (Ill. Rev. Stat., 1977 Supp., ch. 38, par. 1005—5—4.1.) A court of review may modify the sentence where the presumption of correctness has been overcome by an affirmative showing that the sentence is erroneous. (*People v. Cox* (1979), 77 Ill. App. 3d 59, 396 N.E.2d 59.) Stevenson claims that the presumption of correctness has been overcome by the fact that his sentence is twice as great as that of Avery. However, the Act specifically provides that where a defendant is induced by another to commit the crime, this factor may result in mitigation of the sentence. (Ill. Rev. Stat., 1977 Supp., ch. 38, par. 1005—5—3.1(a)(5).) It is apparent from the record that Stevenson instigated the crime and induced Avery to participate. We therefore conclude that the disparity between the sentences of Stevenson and Avery is permissible under the new Act.

Finally, defendant Stevenson contends that he was improperly convicted of both attempt aggravated arson and the lesser included offense of attempt arson. At the sentencing hearing, the trial judge expressly acknowledged that attempt arson is a lesser included offense, and it is clear that Stevenson's sentence was based solely on the conviction for attempt aggravated arson. However, the record shows that Stevenson was charged with both attempt arson and attempt aggravated arson and that he was found guilty in the manner and form as charged in the indictment. This is consistent with the statement of the trial judge at the time he pronounced judgment that "it will be a general finding of guilty" with respect to Stevenson. From the foregoing facts, it appears that Stevenson was convicted of both offenses.

■■ Since attempt arson is by definition a lesser included offense of attempt aggravated arson (Ill. Rev. Stat. 1979, ch. 38, par. 20—1.1), it was improper for the court to convict defendant Stevenson of both offenses (*People v. King* (1977), 66 Ill. 2d 551, 363 N.E.2d 838, *cert. denied* (1977), 434 U.S. 894, 54 L. Ed. 2d 181, 98 S. Ct. 273). The fact that no sentence was imposed on the attempt arson conviction is not sufficient reason to deny Stevenson vacatur of that conviction. (*People v. Jackson* (1978), 57 Ill. App. 3d 809, 373 N.E.2d 583.) Therefore, the conviction for attempt arson should be vacated.

Defendant Avery contends that the State has failed to meet its burden of proving him guilty beyond a reasonable doubt. Avery claims that the evidence establishes nothing more than his presence at the scene, and that this alone is not sufficient to sustain his conviction.

Where the record as a whole shows a reasonable doubt as to the defendant's guilt, a conviction will not be permitted to stand. (*People v. Williams* (1976), 65 Ill. 2d 258, 357 N.E.2d 525; *People v. Ephraim* (1971),

133 Ill. App. 2d 310, 273 N.E.2d 225.) However, the findings of the trial court are entitled to great weight and will not be disturbed on appeal unless they are so improbable as to create a reasonable doubt of guilt. *People v. Ellis* (1978), 74 Ill. 2d 489, 384 N.E.2d 331.

It appears that the findings of the trial court with respect to defendant Avery's participation in the crime are amply supported by the evidence. Tribble testified that he observed Avery striking matches and throwing them into the liquid which defendant Stevenson was splashing on the tavern door. Although Cleo Winters, a tenant in the building, testified that he did not see Avery light any matches, it must be noted that Winters' attention was diverted by the arrival of Tribble and Muse. Thus, Winters did not have Avery in his sight at all times. The trial court chose to believe the testimony of Tribble. Since nothing in the record suggests that this testimony was so improbable as to raise a reasonable doubt of guilt, we must affirm defendant Avery's conviction.

For the foregoing reasons, the conviction of Ricky Stevenson is affirmed as to attempt aggravated arson and reversed as to attempt arson. The conviction of Alfred Avery for attempt aggravated arson is affirmed.

Affirmed in part; reversed in part.

JOHNSON and ROMITI, JJ., concur.