THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JEFFERY CHIANAKAS, Defendant-Appellant.—THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* RENE L. LaMAGNA, Defendant-Appellant.

Second District   Nos. 81—934, 81—935 cons.

Opinion filed April 25, 1983.

William E. Sisler, of Madden and Sisler of Freeport, for appellant Jeffery Chianakas.

Julius Lucius Echeles and Caroline Jaffe, both of Chicago, for appellant Rene L. LaMagna.

Daniel Doyle, State's Attorney, of Rockford (Phyllis J. Perko, Judith M. Pietrucha, and Martin Moltz, all of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE UNVERZAGT delivered the opinion of the court:

The defendants, Jeffery Chianakas and Rene L. LaMagna, were charged by information in the circuit court of Winnebago County with knowing and unlawful delivery of a controlled substance under section 401(a)(2) of the Illinois Controlled Substances Act (Ill. Rev. Stat. 1979, ch. 56½, par. 1401(a)(2)). A third defendant, Terry Forbes, was charged with possession of a controlled substance under section 402 of the Act (Ill. Rev. Stat. 1979, ch. 56½, par. 1402). All three were charged with calculated criminal drug conspiracy (Ill. Rev. Stat. 1979, ch. 56½, par. 1405(b)).

Each of the defendants filed a motion to suppress evidence which had been taken from them by police officers following their warrantless arrests. Hearing was had on these motions prior to trial and the motions were denied.

The three defendants were then tried in a joint jury trial. Forbes was directed out at the close of the People's case and the conspiracy charges were dropped. Chianakas and LaMagna were convicted of unlawful delivery of more than 30 grams of a substance containing co-

caine. Each was sentenced to six years' imprisonment. Their appeals were consolidated in this court.

Three briefs were filed by the defendants. Chianakas filed a brief; LaMagna's original appellate counsel filed one; and his subsequent appellate counsel filed a supplemental brief. The issues raised in those briefs may be summarized as follows: (1) Whether evidence seized at the time of the defendants' arrests should have been suppressed; (2) Whether LaMagna's request that his case be severed should have been granted; (3) Whether dismissal of the conspiracy charge against the defendants should have resulted in a mistrial; (4) Whether the State proved beyond a reasonable doubt that the defendants were guilty of delivering a substance under section 401(a)(2); (5) Whether the State sustained its burden of proof as to the amount of the substance delivered; (6) Whether LaMagna was deprived of the effective assistance of counsel; and (7) Whether the jury was properly instructed on the law of accountability.

The following evidence was adduced at a pretrial suppression hearing. Shortly after midnight on December 18, 1980, Agent Mason of the Illinois Division of Criminal Investigation went to the Albert Pick Motel in Rockford, Illinois, in response to a phone call from defendant Chianakas. Mason went to Room 229. Defendants Chianakas and LaMagna were there, as well as a third individual who was never identified. LaMagna and the unidentified person left the room, with LaMagna carrying a brown suitcase. They were observed by surveillance officers as they walked north and west from the room. About five minutes later they drove east in a yellow Cadillac that was found to be registered to Rene LaMagna. When LaMagna entered the Cadillac he was carrying a blue and white athletic-type bag. About 20 to 30 minutes later the same car returned to the Albert Pick Motel with LaMagna and a man later identified as Terry Forbes. LaMagna went to Room 407, empty-handed. Forbes drove the Cadillac from the scene, eastbound.

According to Agent Mason, he was supposed to buy eight ounces of cocaine from Chianakas. After LaMagna and the unidentified person left the room, Chianakas showed him a drawer in which there was a bag purportedly containing one ounce of cocaine but said there was a delay in completing the deal because one of Chianakas' men had been stopped by the State police. Agent Mason went outside to an unmarked squad car to get $1,800 from Detective Kuparski. The cocaine was left in the drawer. Upon Mason's return, Chianakas told him that the price had increased to $1,900. Chianakas said he had put up $8,000 for the cocaine for the deal and "Rene" put up the other half

of the money; that "Rene" was one of the people who had left the room shortly after Mason arrived. Agent Mason went to the car to get the additional $100, and at Chianakas' request Deputy Kuparski came in from the car. Chianakas pocketed the $1,900 and then left the room, saying he was going to get more cocaine. This occurred after LaMagna had returned to the motel in the yellow Cadillac. Chianakas was observed leaving Room 229, walking north and west to the rear of the complex, and entering Room 407. While he was gone, Deputy Kuparski returned to the car. Agent Mason informed the Illinois State Police that, since he would be unable to buy all of the cocaine due to the price increase, the other subject who had left should have part of the cocaine with him. Chianakas returned after 15 to 30 minutes, placing a clear plastic bag with white powder on the wheel well of the unmarked squad car, in which Deputy Kuparski was sitting, before he reentered Room 229. Chianakas told Agent Mason that he had left four ounces on the car's wheel, and at his direction Agent Mason retrieved the bag and gave it to Deputy Kuparski. Chianakas followed him outside, they got money from the trunk, which Chianakas instructed him to hide, and Deputy Kuparski gave an arrest signal. Agent Mason followed Chianakas back to his room, No. 229, and arrested him as they were opening the door.

LaMagna was registered in Room 407 at the Albert Pick Motel, which is on the northwest end of the motel complex. He was arrested there at about the same time Chianakas was arrested in Room 229.

When a person later identified as Terry Forbes left the Albert Pick Motel alone in the yellow Cadillac, he was followed by Agent Young east to a restaurant, where he was observed entering the restaurant. After two or three minutes, he returned to the car and drove to the Colonial Inn Motel, where he parked in the parking lot. Agent Young returned to the Albert Pick Motel area, and shortly afterward the arrests of Chianakas and LaMagna were made. Agent Young and three other officers then went to the Colonial Inn Motel. After being informed by the motel office that an "R. Magna" was registered in Room 315 and had paid for two persons to stay there, they proceeded to that room, where they arrested Terry Forbes.

The arrests of both LaMagna and Forbes were executed similarly, LaMagna at Room 407 of the Albert Pick Motel and Forbes at Room 315 at the Colonial Inn Motel. Each room had only one door. Room 315 was on the second or third floor. Room 407 was on the first floor. The testimony of the law enforcement officials is that, in each case, four officers were present. They knocked and gave a false identity when asked who was there. When the door was opened slightly by the

occupant, they forced it open wider and entered, identifying themselves as police officers and informing each suspect that he was under arrest. They had their guns drawn while entering. The door to Room 315 was chained when it was opened. Each suspect was secured and handcuffed. In each room the police observed and seized open suitcases whose contents were visible.

The brown suitcase that LaMagna had earlier taken from Chianakas' room was found in plain view in Room 407 on a small suitcase stand to the right of the door. Various officers observed in it a bowl, mixer, plastic bags, bottle of mix, a gram scale, a mortar and pestle with white powdery residue on it, an empty jar, and a green tote bag. There was a blue and white athletic-type bag in Room 315. A manilla envelope was sticking out of it, and the tops of four ziplock plastic bags in the envelope were visible. The plastic bags contained a white powder, and there was also a brown bottle of white powder in the bag. The brown suitcase and the blue and white bag and their contents were seized as evidence. Also seized were two bundles of money in the amount of $1,900 in marked currency and $870, taken from LaMagna's person in the course of pat searching him. There was no warrant for any of the arrests or for any seizure of evidence, nor was there any attempt to obtain an arrest warrant or search warrant.

The defendants told a different story. Forbes testified that the blue and white bag was on a dressing table under a wall mounted television set, that it was zipped closed, and that the manilla envelope was not visible. He also denied opening the door to the room. LaMagna testified that the brown suitcase was standing upright, behind the open door, fully zipped closed.

The trial court denied the motions of each defendant to suppress the physical evidence. The court found that there was probable cause to secure the rooms in that the police had a reasonable basis to believe that contraband would be in the rooms, they determined that a person was in each room, and the nature of the contraband was that it could be easily destroyed.

■ The defendants argue that the warrantless seizure of evidence from LaMagna's and Forbes' rooms and from LaMagna's person was unconstitutional in that there were no exigent circumstances and that the search exceeded the proper scope of a search incident to a valid arrest. The State argues that Chianakas has no standing to challenge the constitutionality of the seizure of the evidence from LaMagna's and Forbes' rooms and that LaMagna has no standing as to Forbes' room, in that they had no legitimate expectations of privacy in those places. The State concedes that it did not raise the issue of standing

below but urges that it be considered on appeal since the record contains the necessary factual basis for a determination of this question, citing *Kravis v. Smith Marine, Inc.* (1975), 60 Ill. 2d 141. However, the decision in *People v. Holloway* (1981), 86 Ill. 2d 78, 91-92, is controlling. There, the State did not challenge the standing of the defendant when he joined in his codefendant's motion to suppress evidence. The court held that the State had waived the issue of standing by not raising it at the trial level, reasoning that a timely objection by the State would have afforded the defendant an opportunity to try to show a possessory interest in the premises from which the evidence was taken. In the instant case, not only did the State fail to raise the issue, but it expressly waived it in response to defense counsel's query. The State is therefore barred from raising this issue for the first time on appeal.

There was ample evidence presented that the brown suitcase and blue and white bag were both open and that they and their contents were in plain view. Although the defendants denied those assertions, the visibility of the suitcases and their contents is a question of fact, and we find there is no basis for overturning the trial court's finding on that question. If the police were legitimately on the premises, then it was proper to seize the evidence. Items inadvertently discovered in plain view in a place where the police have a right to be may be seized if there is probable cause to believe they constitute the proceeds or instrumentalities of a crime. (*People v. Harris* (1982), 104 Ill. App. 3d 833, 845.) As to the money seized from LaMagna, a full search of one's person incident to a valid custodial arrest is also permissible without additional justification. (*People v. Seymour* (1981), 84 Ill. 2d 24, 34-36.) The initial inquiry then is whether the officers properly entered and arrested the defendants.

In *Payton v. New York* (1980), 445 U.S. 573, 63 L. Ed. 2d 639, 100 S. Ct. 1371, the United States Supreme Court held that the fourth amendment of the United States Constitution prohibits warrantless entry into the home of a suspect, for the purpose of arrest, unless there is consent to the entry or there exist exigent circumstances that justify proceeding without a warrant. *Payton* was followed by our supreme court in *People v. Abney* (1980), 81 Ill. 2d 159. In *Abney*, the hospitalized victim of a beating told police officers the name and address of his assailant and that the assailant had walked in the direction of his home after the beating. The police proceeded directly to the suspect's home, knocked, identified themselves, and entered the home when the door swung open. In holding that exigent circumstances were present, the supreme court found it important

that "the officers who entered defendant's home were presented an unusual opportunity to quickly apprehend an armed suspect and thereby prevent his escape, avoid exhaustion of law-enforcement resources, and help ensure against further endangerment to the community." (81 Ill. 2d 159, 169.) The court articulated several factors that evidenced exigent circumstances: (1) the immediacy with which the officers proceeded to the suspect's residence upon learning his identity (circumstances within the spirit of the "hot pursuit" exception), (2) the absence of deliberate or unjustified delay by the officers during which a warrant could have been obtained, and (3) the belief that the suspect was armed and exhibited some sign of a violent character. All of these factors indicated that there was a need for prompt action, and therefore exigent circumstances were present. The court also determined that the officer's actions in response to the exigent circumstances were reasonable in light of the following factors: (1) a clear showing of probable cause based on reasonably trustworthy information necessary to justify the warrantless procedure, (2) clear identification of the suspect, (3) a reasonable belief that the suspect was in the premises entered, and (4) a peaceful entry. 81 Ill. 2d 159, 169-72.

In *People v. Eichelberger* (1982), 91 Ill. 2d 359, our supreme court examined a different factual basis for exigent circumstances sufficient to justify entry to make a warrantless arrest. There, a police officer, having been advised the previous day that the defendant was suspected of selling contraband at a particular hotel, positioned himself in a room next to the defendant's room, observed the defendant and another person enter the defendant's room, and overheard the defendant say he had some "grams" the person could have and expected to get some "coke" in a few days. The door to the defendant's room was open at least a crack, and the officer was aware that it was open. He gave an arrest signal, and the defendant was arrested and searched. The supreme court noted that residents of a hotel are entitled to the same constitutional protection against unreasonable searches as are enjoyed by residents of private homes. The fact that the door was cracked open did not amount to a waiver of the defendant's fourth amendment rights or justify a warrantless entry, although it was relevant to the peaceful nature of the entry. Rather, the warrantless entry could be justified only by exigent circumstances. The court stated that the factors enunciated in *Abney* were not exclusive and that each case must be decided on its own facts. The court held that the officers' reasonable belief that a felony was being committed in their presence demanded prompt police action and constituted an exigent circumstance that justified the warrantless entry into the ho-

tel room and the arrest. Since the warrantless arrest was valid, the officers had the right to conduct a contemporaneous search of the defendant's person and the area within his immediate control. 91 Ill. 2d 359, 370-71.

In the case at bar, there was neither consent nor a warrant for the entry into the motel rooms to arrest LaMagna and Forbes, and therefore there must be exigent circumstances to justify the entry. An examination of the *Abney* guidelines shows that the police proceeded promptly to effect the arrest and there was no delay during which they could have procured a warrant. However, recentness of the offense alone cannot give rise to exigent circumstances, absent a need for prompt action, such as where delay to obtain a warrant would impede a promising investigation and conceivably provide the time needed to avoid capture altogether. *People v. Klimek* (1981), 101 Ill. App. 3d 1, 5.

■ In this case, the officers visually witnessed Chianakas enter Room 407, where LaMagna was waiting, leave there and deliver four ounces of cocaine to Agent Mason. Such an offense is a felony. (Ill. Rev. Stat. 1979, ch. 56½, par. 1401.) The fact that the officers reasonably believed that a felony was being committed in their presence demanded prompt police action and constituted an exigent circumstance which justified the warrantless entry into the hotel rooms and the arrests. (*People v. Eichelberger* (1982), 91 Ill. 2d 359.) The fact that the arrest of LaMagna was made minutes after the officers reasonably believed he committed a felony establishes the reasonableness of the warrantless entry and arrest. This is further supported by the fact that prior to the controlled buy there was no probable cause to support the issuance of a warrant. There was no unjustified delay on the part of the police, and the immediacy of the arrest would minimize the risk that evidence would be lost.

LaMagna had driven out for one night, renting rooms at two different motels. It was reasonable for the officers to believe that La-Magna had either witnessed the arrest of Chianakas or heard the commotion incident to it. Before that arrest, the police had reason to believe that LaMagna had the remaining cocaine in his possession and that he was waiting for Chianakas to return with the money. Clearly, prompt police action was called for. Two of the three exigent circumstances enunciated in *Abney* were present here. The third factor, whether the defendant was armed, is not clear although the police had reason to believe Chianakas allegedly carried a weapon when he did his dealing. They had little or no information on either LaMagna or Forbes. However, the amounts of money and drugs involved would

lead to a reasonable belief that the perpetrators might well be armed and dangerous so as to lead the police to concern for the safety of their undercover officers.

We determine it was reasonable for the trial court to conclude that the evidence was seized incident to a valid arrest and in plain view. *Chimel v. California* (1969), 395 U.S. 752, 23 L. Ed. 2d 685, 89 S. Ct. 2034; *Coolidge v. New Hampshire* (1971), 403 U.S. 443, 29 L. Ed. 2d 564, 91 S. Ct. 2022.

■ Also at issue is whether the evidence seized from Forbes' room should have been suppressed. However, where there is sufficient, competent evidence establishing a defendant's guilt beyond a reasonable doubt and it does not appear that the error complained of was the basis of the jury's verdict, that error is harmless and reversal is not required. (*People v. West* (1981), 102 Ill. App. 3d 50, 54.) Here, the cocaine found in the blue and white bag in Forbes' room was not necessary to the convictions of Chianakas and LaMagna. The delivery charges against them were based on the four ounces of cocaine placed on the wheel well of the squad car and the one-ounce bag in the dresser drawer. Since there was ample evidence to sustain their convictions aside from that seized during Forbes' arrest, any error that would have resulted from the wrongful introduction of that evidence would have been harmless, and we need not consider whether it should have been suppressed.

The next issue presented is whether LaMagna's request that his case be severed should have been granted. Following the individual charging of the defendants, the State moved for consolidation of the three cases pursuant to sections 111—4 and 114—7 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1979, ch. 38, pars. 111—4, 114—7), and the report of proceedings reflects that the cases were joined. Section 114—7 permits the joinder of related prosecutions if the offenses and the defendants could have been joined in a single charge. Section 111—4 provides that two or more defendants may be charged together if they are alleged to have participated in the same act or in the same comprehensive transaction out of which the offense or offenses arose. The offenses with which the defendants in the instant case were charged clearly arose from the same comprehensive transaction, and the cases were therefore properly consolidated initially.

Section 114—8 (Ill. Rev. Stat. 1979, ch. 38, par. 114—8) provides for severance when a defendant is prejudiced by a joinder of related prosecutions. It is incumbent upon a defendant moving for a separate trial to demonstrate prior to trial how he would be prejudiced by a

joint trial. (*People v. Stevenson* (1980), 90 Ill. App. 3d 903.) Mere apprehensions of prejudice are not enough. (*People v. Yonder* (1969), 44 Ill. 2d 376, 386.) A defendant must actively and specifically point out the antagonism of the defenses and so demonstrate the prejudice that will result from a joint trial. Such prejudice may occur in the State's introduction of the admission of a codefendant that implicates the defendant but denies the defendant the right of confrontation if the codefendant does not take the stand. *People v. Lee* (1981), 87 Ill. 2d 182, 189.

LaMagna's motion for severance was filed prior to trial, alleging that neither LaMagna nor his counsel was present for the hearing of the State's motion for consolidation; that LaMagna and the other defendants had substantially different defenses, particularly as to the evidence involved; that joinder would make a fair and impartial trial impossible for LaMagna in that the jury would hear evidence inadmissible as to LaMagna but admissible as to the other defendants; and that a joint trial could be prejudicial in light of the criminal conspiracy charge. He suggested that numerous statements made by Chianakas to law officers would not be admissible against LaMagna and should not be heard by his jury. The State's Attorney acknowledged that a statement attributed to Chianakas could be prejudicial but proposed that he simply warn his witness not to disclose that statement at trial. This was permissible under *People v. Lee* (1981), 87 Ill. 2d 182, 187.

■ The trial court found that there was no danger of prejudice to the defendants and denied the motion for severance. The decision to grant a separate trial is within the sound discretion of the trial court and will not be reversed absent an abuse of that discretion. (87 Ill. 2d 182, 186.) It is apparent that the trial court took steps to protect LaMagna from potential prejudice by having the witness forewarned not to mention certain prejudicial information, the substance of which is unclear from the record. LaMagna did not further specify just how his defense would vary from the others or what other particular evidence might be inadmissible as to him, and we find no basis for error in the trial court's denial of the motion for severance.

The next issue is whether dismissal of the conspiracy charge against the defendants should have resulted in a mistrial. At the close of the State's case, Forbes was granted a directed verdict as to the conspiracy charge against him. In light of the statutory requirement that there be three actors in a criminal drug conspiracy (Ill. Rev. Stat. 1979, ch. 56½, par. 1405(b)(2)), the conspiracy charge was also dismissed as to Chianakas and LaMagna.

LaMagna argues that the State's failure to sustain the conspiracy charge was grounds for a mistrial in that evidence was adduced at trial that was relevant to the criminal conspiracy charge but not to the separate charges against the three defendants. He cites for support the denial of the motion *in limine* to exclude conversations between Agent Mason and Chianakas and also cites the objections at trial that certain inadmissible or highly prejudicial statements implicating LaMagna were being heard by the jury. He argues that, since Chianakas did not take the stand, LaMagna was unable to cross-examine him and consequently was denied his right of confrontation guaranteed by the sixth amendment to the Constitution of the United States. However, nowhere does LaMagna point to any such statements that actually were presented to the jury. He simply states that "objectional evidence" was allowed to stand after the court dismissed the criminal conspiracy charge and that "the constant flow of testimony from Agents Mason and Kuparski to the jury concerning conversations were too prejudicial."

An examination of Agent Mason's testimony reveals the following references to a conversation with Chianakas:

"Q. [By Mr. Prorok, State's Attorney] After Mr. LaMagna and the other individual left Room 229, what happened between you and Mr. Chianakas?

A. [Agent Mason] We exchanged just a brief conversation.

Mr. Schirger [Attorney for defendant LaMagna]: Your Honor, I'm going to object at this point on the basis of hearsay. I don't believe as far as my client is concerned any testimony about conversations between Officer Mason and Mr. Chianakas is admissible as far as Mr. LaMagna is concerned.

MR. GAZIANO [Attorney for defendant Forbes]: I would also join in that objection, Your Honor.

THE COURT: The fact that they had a conversation may be elicited from the witness. You may continue.

MR. PROROK [State's Attorney]: What was the subject matter of this conversation?

MR. GAZIANO: Objection.

MR. SCHIRGER: I object to the subject matter.

THE COURT: Objection is noted and sustained.

MR. PROROK: After you had this conversation with Mr. Chianakas, what happened?

* * *

[Agent Mason] At that time, he picked up the money, counted it, put it in his right pants pocket, and we engaged in a conver-

sation."

This in no way implicates LaMagna. The objections were made and sustained before the substance of the conversation was elicited. Agent Mason did testify at the suppression hearing as to statements made by Chianakas implicating LaMagna, but none of that conversation was entered at the trial.

LaMagna also posits that defendant Forbes' election to testify of itself made codefendants LaMagna and Chianakas appear guilty because they did not testify. However, Forbes did not implicate the others in his testimony. He simply acknowledged driving to Rockford with LaMagna and that the blue and white bag was in the motel room. Moreover, he was subject to cross-examination by both codefendants. The mere fact that he testified cannot be said to have prejudiced the other defendants.

LaMagna further states that the conspiracy charge against the three defendants was the only proper basis for joinder and that, when it was dismissed, there was no longer a proper basis for the joint trial. The offenses with which the defendants were charged allegedly arose from the same comprehensive transaction, furnishing a basis for joinder independent of the common charge of conspiracy. Since there has been no showing of prejudice arising from the joint trial, LaMagna's argument that he should have been granted a mistrial is without merit. *Schaffer v. United States* (1960), 362 U.S. 511, 513, 4 L. Ed. 2d 921, 924, 80 S. Ct. 945, 947.

The next issue is whether the State proved beyond a reasonable doubt that the defendants were guilty of delivering a substance under section 401(a)(2). The defendants construe that section of the Illinois Controlled Substances Act (Ill. Rev. Stat. 1979, ch. 56½, par. 1401(a)(2)) to apply only to free-base cocaine. If this interpretation is correct, in order to sustain its burden the State must have proved beyond a reasonable doubt that the substance seized from the defendants contained free-base cocaine. The defendants contend that the State did not meet its burden in that there was convincing evidence that the substance found was cocaine hydrochloride, a salt of cocaine, rather than free-base cocaine.

The statute provides:

"Except as authorized by this Act, it is unlawful for any person knowingly to manufacture or deliver *** a controlled substance. Any person who violates this Section with respect to:

(a) the following controlled substances and amounts, notwithstanding any of the provisions of subsections (b), (c), (d) or (e) to the contrary, is guilty of a Class X felony. The fine for viola-

tion of this subsection (a) shall not be more than $200,000:

* * *

(2) 30 grams or more of any substance containing cocaine;

* * *

(b) any other amount of a controlled substance classified in Schedules I or II which is a narcotic drug is guilty of a Class 2 felony. The fine for violation of this subsection (b) shall not be more than $25,000." (Ill. Rev. Stat. 1979, ch. 56½, par. 1401(a)(2), (b).)

The defendants argue that salts of cocaine are governed by subparagraph (b) rather than by subparagraphs (a)(2). Subparagraph (b) refers to schedules I and II. (See Ill. Rev. Stat. 1979, ch. 56½, pars. 1204, 1206.) The term "cocaine" does not appear in either schedule I or II, which lists controlled substances.

It is axiomatic that a statute must be construed in its entirety and in light of its objectives. (*People v. Ikerd* (1963), 26 Ill. 2d 573, 578, *cert. denied* (1963), 374 U.S. 850, 10 L. Ed. 2d 1071, 83 S. Ct. 1915.) As the State points out, section 206 of the Act (Ill. Rev. Stat. 1979, ch. 56½, par. 1206) should be considered in determining the meaning of section 401(a)(2). That section provides:

"(a) The controlled substances listed in this section are included in Schedule II.

(b) Unless specifically excepted or unless listed in another schedule, any of the following substances whether produced directly or indirectly by extraction from substances of vegetable origin, or independently by means of chemical synthesis, or by combination of extraction and chemical synthesis:

* * *

(4) Coca leaves and any salt, compound, derivative, or preparation of coca leaves, and any salt, compound, derivative, or preparation thereof which is chemically equivalent or identical with any of these substances, but not including decocainized coca leaves or extractions of coca leaves, which extractions do not contain cocaine or ecgonine ***." Ill. Rev. Stat. 1979, ch. 56½, par. 1206(a), (b)(4).

In *People v. Phelan* (1981), 99 Ill. App. 3d 925, the court considered whether the use of the term "cocaine" in a charge adequately apprised the defendants of the crimes of which they were charged. The court noted that the statutory deletion of the term "cocaine" from schedule II did not remove cocaine from statutory control and that the schedule II provision of coca leaves and their derivatives related to cocaine. The court concluded that the schedule II language

defines the *"l"* isomer of cocaine, which in street language is known simply as cocaine. (99 Ill. App. 3d 925, 930-31.) In *People v. Royse* (1982), 107 Ill. App. 3d 326, 330, the court rejected the argument that certain forms of cocaine are not controlled by the Act. Relying on these cases, the State urges in the instant case that, since the schedule II language is the only reference to cocaine to be found in the schedules, it can be deemed to define cocaine. Since that subsection expressly includes salts, the State suggests that the very definition of "cocaine" for purposes of schedule II includes any salt, compound, derivative, or preparation of coca leaves and that salts of cocaine are therefore intended to be included in section 401(a)(2)'s "substance containing cocaine." This argument is persuasive.

■ The defendants rely on testimony at trial that there is a chemical distinction to be made between cocaine and cocaine hydrochloride. However, legislative definitions commonly create a narrower or broader meaning of terms for the purposes of the statute than would other definitions commonly used. (*People v. McCarty* (1981), 86 Ill. 2d 247, 254.) Thus salts of cocaine could properly be included in the statutory term "cocaine" itself, notwithstanding contrary scientific usage.

The defendants also argue that section 401(a)(2)'s phrase "substance containing cocaine" refers to a pharmaceutical mixture and not a chemically bonded compound. However, as the State correctly notes, that proposition fails in view of the statutory construction cross-referencing section 401(a)(2)'s use of the term "cocaine" to the schedule II subsection (b)(4). Moreover, when a similar argument was made concerning another schedule II substance, the court thought it unreasonable to believe that the legislature intended a technical pharmaceutical interpretation. (*People v. Otten* (1980), 91 Ill. App. 3d 692, 697.) That case also stated that the purpose of the statute is to curb drug abuse and deter the unlawful and destructive use of controlled substances. That purpose would be effectuated by the construction urged here by the State.

In light of this statutory construction of section 401(a)(2), the contention that the State did not prove beyond a reasonable doubt that the substance was free-base cocaine rather than cocaine hydrochloride need not be discussed.

The defendants also argue that the State did not prove beyond a reasonable doubt the weight of the substance. The weight of all the bags seized was 249.6 grams. However, there was no evidence presented as to the weight of each individual bag. The bags introduced into evidence were from the two separate alleged deliveries made by

Chianakas and from Forbes' room. The defendants contend that the failure to show the individual weights of the bags resulted in indefinite proof, since the bags found in Forbes' room were not a part of the delivery charge, and that their convictions were wrongfully based on speculation by the jury. The defendants liken the lack of evidence of individual weights to a case where a failure to adequately test separate bags of heroin for their content amounted to a failure to the State to meet its burden of proof. (*People v. Ayala* (1981), 96 Ill. App. 3d 880.) The defendants also argue that there is no indication in the record that the bags appeared to be approximately the same size.

■ Even without the individual weights of the bags, however, there was sufficient information to support a finding that the substance delivered was equal to or greater than 30 grams. The State points to testimony that Chianakas had indicated the first bag he delivered weighed one ounce and the other four bags four ounces. Since one ounce is approximately 28.8 grams, five ounces would easily satisfy the requirement of section 401(a)(2). Furthermore, the jury's opportunity to view the bags, coupled with the chemist's testimony regarding the total weight, provides an acceptable basis for the jury to believe the delivered amount to be 30 grams or more. (*People v. Tonaldi* (1981), 98 Ill. App. 3d 528, 532.) It cannot be said that the evidence here is so improbable as to raise a reasonable doubt of the defendants' guilt, and the defendants' convictions will not be overturned on the basis of this issue. 98 Ill. App. 3d 528, 532.

The next issue is whether LaMagna was deprived of the effective assistance of counsel.

■ In order to establish ineffective assistance of counsel, a defendant must show that his attorney was actually incompetent and that this incompetence produced substantial prejudice to the defendant without which the jury's verdict would probably have been different. (*People v. Pugh* (1982), 106 Ill. App. 3d 901, 908.) LaMagna points out several instances that he alleges exemplify inadequate representation, but nowhere does he show any resulting prejudice, and a review of the record discloses no such prejudice. Without an indication of prejudice, this argument fails.

The last issue is whether the jury was properly instructed on the law of accountability.

LaMagna argues that, although there is insufficient evidence to establish that he was a participant in the alleged delivery of the controlled substance, the only possible theory on which he could have been found guilty is by accountability for the sale consummated by Chianakas. He states that his conviction is wholly improper because

the jury was not instructed on this theory in any manner, shape, or form. The State correctly notes that an instruction directed specifically to accountability was tendered to the jury. Therefore, the defendant's contention of error is wholly without merit.

For the foregoing reasons, the judgments of the circuit court of Winnebago County are affirmed.

Judgments affirmed.

SEIDENFELD, P.J., and REINHARD, J., concur.