THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
JOHN TATE *et al.*, Defendants-Appellants.

First District (4th Division) No. 82—1146

Opinion filed March 22, 1984.

ROMITI, J., concurring in part and dissenting in part.

Steven Clark and Patricia Unsinn, both of State Appellate Defender's Office, of Chicago, for appellants.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Kevin Sweeney, and Thomas Gearen, Assistant State's Attorneys, of counsel), for the People.

JUSTICE JOHNSON delivered the opinion of the court:

After a bench trial, defendants, John Tate and Addie Mosby, were convicted of aggravated battery and unlawful restraint (Ill. Rev. Stat. 1979, ch. 38, pars. 12—4, 10—3), and sentenced to imprisonment of four years and 10 years, respectively.

The following issues are raised for review: (1) whether prior consistent statements made by the complaining witness were properly admitted; (2) whether the prosecution unfairly insinuated that defendants had made prior statements inconsistent with their trial testimony; (3) whether the trial judge had a duty to shield himself from the prejudice of unreliable and incompetent evidence at the hearing in aggravation and mitigation; (4) whether a factor necessarily implicit in an offense may be considered by the judge in aggravation at sentencing; (5) whether the trial judge abused his discretion in imposing the maximum term of imprisonment where due consideration was not given to defendant Mosby's proven rehabilitative potential; (6) whether defendants' sentences were grossly disparate; (7) whether defendant Mosby was denied her sixth amendment right under *Bruton* to confront her codefendant Tate concerning his out-of-court statement and antagonistic testimony; (8) whether defendant Mosby was denied effective assistance of counsel due to conflict of interest where the defense attorney could not effectively cross-examine Tate; and (9) whether defendant Mosby has waived her sixth amendment right to be represented by effective counsel, untainted by conflict of interest.

We affirm and modify.

At trial, the complaining witness testified that on June 20, 1981, at abut 4 p.m., she left her house to purchase marijuana. On her way, she met defendant Mosby, whom she had known for about three years. Mosby told complainant that she knew where some marijuana could be purchased. Mosby bought marijuana and then drove to a

building she said she owned. The building was boarded up and padlocked. The complainant and Mosby smoked the marijuana. Mosby told complainant to take off her clothes and then ripped the latter's shirt. Complainant hit Mosby with a bottle. Mosby threatened complainant with a whip, ordering her to undress and to scrub the kitchen floor. At that point, John Tate, the codefendant, came out of the bathroom. Mosby tied complainant's hands and feet. Both defendants undressed and Mosby ordered complainant to perform deviate sex acts on her and Tate. Mosby beat complainant with the whip, hit her about the face with masking tape, and beat her with the whip again. Defendants forced complainant to perform other deviate acts and Mosby beat her repeatedly with the whip and an electrical cord. Defendants and complainant fell asleep. When they awoke, defendants again beat complainant. They shaved her head. On that second day, complainant was beaten three or four times, with Tate beating her once. Tate performed sex acts with the victim. After defendants left, complainant was able to untie her bindings and fled from the building.

Two blocks from the house, complainant met a young man and woman who drove her to a security booth where she was questioned by police. She did not know how much time had elapsed between the time she left the house and the time she saw the police. Paramedics took her to a hospital where she remained for three or four weeks. At the hospital, complainant identified Tate in a photographic lineup. Complainant was 19 years old at the time the incidents occurred. She stated that she never consented to sex acts with either defendant.

On cross-examination, complainant admitted the following: she had dropped rape charges in another case a few years before the present case; she had been hit by automobiles on two occasions; she had attended a special school for emotionally disturbed children and children with learning disorders; she had been under medical care from ages 11 to 16; she had behavior problems and had received psychotherapy; she had, at age 14, a drinking problem; she had smoked marijuana since she was 15; and she had used "speed."

Scott Pierce, a physician, testified that he examined the complainant in an emergency room at Mount Sinai Hospital on June 22, 1981, at around 8:30 a.m. Complainant's head had been shaved bald. She was badly bruised, shaken, obviously in distress, and crying. Her eyes were blackened and her body was covered with bruises, welts, and scratches. Dr. Pierce testified that her welts could have been inflicted by a whip or an electrical cord.

Robert Collins, a Chicago police detective, testified that on the morning of June 22, 1981, he interviewed complainant at Mount Sinai

Hospital, then went to a two-flat building located at 1817 Drake, in Chicago, but it was locked. Collins then went to the 3400 block on West Walnut where he observed a vehicle, a beige Buick, that the victim had described. Collins checked the registration and, after receiving information, went to the address listed. Defendant Mosby answered the doorbell. She told the officer she wanted to change her clothes. After waiting outside for 20 minutes, Collins rang the bell again. Mosby's grandfather opened the door and allowed the police to enter the apartment, but Mosby's grandmother denied the police access to the basement.

Officer Collins then obtained an arrest warrant for Mosby and a search warrant for the Drake address. Mosby went to the police station with family members; Collins arrested her there. Collins did not notice any bruises on Mosby. When Collins returned to the Drake address, defendant Tate opened the door. In his search of the apartment, Collins retrieved a bullwhip, electrical wire, a razor, and hair clippings. Collins also returned to the hospital where complainant identified Tate in a photographic lineup.

Kathleen Leahy, a Chicago police officer, was on duty on June 22, 1981, at 7:40 a.m., when she received a radio assignment and within moments arrived at a guard shack at 2600 South California. Inside were two guards and the victim, who wore a short bathrobe with a belt tied around her waist and a scarf around her head. Her head appeared to have been shaved, welts were on her forehead, her eyes and face were discolored and swollen, and her legs were discolored, bruised and swollen. Leahy asked the complainant what had happened. She replied that she had been beaten and raped by a man. The defense objected but the trial court allowed Leahy's testimony as to the victim's statement as an excited utterance exception to the hearsay rule. The court stated that circumstantial evidence proved that only a few minutes had elapsed from the time the victim escaped to the time Leahy asked the question. The victim was still in an agitated condition.

The parties stipulated that no evidence of semen was present in swabs taken from the victim, but spermatozoa was recovered from the robe she wore. The prosecution then rested.

Bernard Liftridge, who was a friend of Mosby and who had known the victim for two or three years, testified that the victim had used speed, LSD and marijuana, that he had seen her on two occasions with bruises on her body, and that she had a reputation for telling lies.

Michael Collins, Mosby's cousin, also had known the victim for

about two years. He testified that the victim had used marijuana, acid and speed.

John Tate testified in his own defense. He stated that he first saw the complainant with Mosby at 7 or 8 p.m. on June 20, 1981. They were walking down the street near a two-flat building at 1817 South Drake, which he owned. Mosby had a key to the premises. Sometime later, Tate, who was in the upstairs apartment, heard noises coming from the first floor apartment. When he went to investigate, Mosby and complainant were "tussling." Tate left the building and returned around 10 p.m. Then he and Mosby left to buy sandwiches. All three drank and smoked marijuana. Mosby and complainant took pills and had sex with each other. Before Tate left, Mosby and complainant argued and pushed each other. Complainant told Mosby, "why don't you beat me." Mosby whipped complainant with an extension cord, but the latter's hands were not tied.

Tate denied having sex with complainant and denied that there had been a padlock on the door. He stated that complainant never asked to go home, was always free to leave, and never cried or screamed for help. Mosby cut the victim's hair, but Tate did not assist. Complainant did not object when Mosby removed some of her hair with a razor, and told Mosby to shave her head. When Tate left the apartment at 5 a.m. Monday with Mosby, the complainant was watching television. She had welts and bruises on her arms, buttocks and legs, but not on her face. Complainant told Mosby she did not want to leave and that Mosby could tie her up. Mosby tied complainant's hands and feet. Tate saw Mosby beat complainant only once, hitting her seven or eight times.

Addie Mosby testified that she had known the complaining witness for five or six years and that they had used drugs together. On June 20, 1981, she met complainant around 6 p.m. They smoked marijuana and drank beer and then went to the apartment on Drake. There was no padlock on the door. In the apartment, they drank, smoked and then argued. Complainant hit Mosby with a bottle and the latter hit complainant in the eye. At that point, Tate came downstairs and joined them in smoking and drinking. When he left, Mosby and complainant took an "acid" tablet and made love to each other. Mosby left with Tate to buy sandwiches while complainant remained in the apartment. She was not tied up and was free to leave whenever she so desired. All three ate, drank and smoked marijuana.

Complainant told Mosby that she was having problems at home and wanted to stay at the apartment, and, to prove this, Mosby had permission to cut complainant's hair. Complainant did not cry or

scream. She and Mosby again had sex. Complainant asked Mosby to tie her up and beat her. Mosby gave complainant two beatings: the first time she hit complainant 10 times; the second time she hit her 15 to 30 times. She beat complainant with an extension cord, not a whip. She never hit complainant around the head except once. Complainant also tied and beat Mosby, but the latter never sought medical attention for her injuries.

Tate never had sex with complainant and never beat her. Complainant consented to sex with Mosby. Before Mosby left the apartment on Monday morning, she tied up complainant. When the police came to arrest Mosby, she ran out the back door.

Sonia Yvalle, a psychiatrist, treated the complaining witness in July 1981 and diagnosed her a manic depressive. Sheila Curren, a psychiatric social worker, testified that she interviewed complainant during her stay at Mount Sinai Hospital.

The defense rested. On rebuttal, the prosecution recalled Officer Robert Collins. He testified that after *Miranda* warnings, Mosby told him that she tore off the victim's clothing after a fight over money and that she struck the victim about 50 times. Tate told Officer Collins that he found the two women fighting, then left and returned about 10 p.m. Tate left again and did not return until Monday, June 22, 1981.

The defense recalled Tate who denied that he told Officer Collins that he (Tate) disappeared after the fight.

At the conclusion of trial, the judge found defendants not guilty of rape, deviate sexual assault and armed violence, but guilty of aggravated battery and unlawful restraint. The judge sentenced Tate to five years' imprisonment, but later reduced the sentence to four years, and Mosby to an extended term of 10 years' imprisonment. Defendants appeal.

Defendants argue that the credibility of the complaining witness was improperly bolstered by the admission of her prior consistent statements and by the prosecution's insinuation that defendants had made prior inconsistent statements to police. Defendants find objectionable statements by Officer Leahy, Dr. Yvalle, and Sheila Curren that complainant said she had been beaten and raped.

Defendants also find objectionable the prosecution cross-examination of them. The prosecution asked Mosby: "Did you also tell Detective Collins that you asked [complainant] about the money at that time and she denied that she took any money?" Mosby answered: "Not at that time. I asked her after we were in the building." Later, the prosecution asked Mosby: "Do you remember telling Detective

Collins that you struck [complainant] numerous times?" Mosby responded: "Not at that time, no." The prosecution asked Tate whether he told Officer Collins that when he left the building and returned at 10 p.m. he found complainant and Mosby fighting. Tate said he did not make any statements to the police. The prosecution also asked Tate whether he made certain exculpatory statements to police; Tate denied making them. Defendants claim that the prosecution did not properly complete its impeachment because Officer Collins was not asked on rebuttal whether defendants made all those statements. In its brief, the People concede that the prosecution failed to perfect its impeachment of defendants on certain minor points.

■ We reject defendants' arguments because we find that these alleged errors did not prejudice defendants. With regard to the hearsay statements, we note that defendants did not object to the statements made by Yvalle and Curren when they were made. A rule of evidence not invoked by timely objection is waived for purposes of appeal. (*People v. Griggs* (1982), 104 Ill. App. 3d 527, 531, 432 N.E.2d 1176, 1179.) The trial court admitted the statement of Officer Leahy as an excited utterance. Even if we assume, *arguendo*, that the statement was inadmissible, defendants suffered no prejudice. Where erroneously admitted evidence does not prove any element of the crime not established by other properly admitted evidence, then the error in admitting such evidence does not contribute to the finding of guilt and is harmless. (*People v. Bacon* (1980), 91 Ill. App. 3d 673, 681, 415 N.E.2d 678, 684.) There was ample other evidence that complainant was beaten by defendants—complainant's own testimony, photographs of complainant and the testimony of those who observed her condition after she escaped from the apartment, Mosby's admission that she beat complainant, and Tate's statement that he saw Mosby beat complainant.

■ With regard to the failure of the prosecution to perfect its impeachment, a failure to follow through with proof of a prior inconsistent statement is not always reversible error. Reversal is not required where there is positive evidence of guilt. (*People v. Purrazzo* (1981), 95 Ill. App. 3d 886, 897, 420 N.E.2d 461, 469.) As stated above, there was positive evidence of defendants' guilt. Therefore, we hold that admission of hearsay statements and imperfect impeachment of defendants in this case do not constitute reversible error.

■ Defendants raise several issues with regard to sentencing. They contend that their sentences must be vacated and the cause remanded for resentencing because the trial judge considered unreliable evidence, and a factor necessarily implicit in every aggravated bat-

tery, in reaching his sentencing determination.

At the hearing in aggravation and mitigation on May 12, 1982, complainant testified, over defense objection, that she was unable to work and to attend school until recently because of the incident. She continued to receive counseling for emotional problems resulting from the battery; she had problems discussing sex, and had nightmares about beatings. In imposing sentence, the trial judge remarked that uppermost in his mind was the serious harm to the victim and the fact that the offense was premeditated. Defendants complain that the trial judge made no effort to insure the reliability or accuracy of the victim's testimony and allowed his sentencing determination to be influenced by the serious harm suffered by the victim although it was no greater than that inherent in almost all aggravated batteries.

We reject defendants' arguments. The effect of a crime upon the victim is an aggravating factor which a sentencing court may properly consider. Indeed, the legislature has required that such information be included in presentence reports. (Ill. Rev. Stat. 1979, ch. 38, par. 1005—3—2(a)(3).) Additionally, section 5—5—3.2(a)(1) of the Unified Code of Corrections (Ill. Rev. Stat. 1979, ch. 38, par. 1005—5—3.2(a)(1)) lists as an aggravating factor that defendant's conduct caused or threatened serious harm. Courts have said that harm to a victim is properly considered under this provision. *People v. Burton* (1981), 102 Ill. App. 3d 148, 153, 429 N.E.2d 543, 547.

Defense counsel cross-examined the complainant at the hearing in aggravation and mitigation. We will not substitute our judgment for that of the trial judge with respect to her credibility. (*People v. Gray* (1981), 99 Ill. App. 3d 851, 856, 426 N.E.2d 290, 293.) We note that in pronouncing the verdict the trial court found the victim's testimony "believable," and "clear and convincing," but gave defendants the benefit of the doubt on the issue of corroboration. Complainant's beating was corroborated, but not the sex offenses.

We reject the notion that the harm caused to complainant was no greater than that inherent in almost all aggravated batteries. Complainant's head was shaved, her eyes were blackened, and her body was covered with bruises, welts and scratches. She was hospitalized for several weeks. In our opinion, the trial court, at the hearing in aggravation and mitigation, properly considered complainant's testimony as to the harm she suffered.

■ Defendant Mosby argues that her sentence of 10 years is disparate compared to Tate's sentence of four years and is inconsiderate of her background and rehabilitative potential. The trial judge found Mosby's conduct exceptionally brutal and heinous and indicative of

wanton cruelty and sentenced her to an extended term of 10 years. He sentenced Tate to five years but later reduced the sentence to four years.

A trial judge's decisions regarding sentencing are entitled to great deference because the trial judge is ordinarily in a better position to determine the punishment to be imposed. However, fundamental fairness and respect for the law require that defendants similarly situated not receive grossly disparate sentences. (*People v. Bares* (1981), 97 Ill. App. 3d 728, 738, 423 N.E.2d 538, 545.) We believe that Mosby's sentence is so disparate that it must be reduced to be more consistent with that of her accomplice. Mosby had no history of prior criminal activity, while Tate had prior convictions for robbery, auto theft and unlawful use of a weapon. While Mosby participated more actively in the beatings, the trial court found both defendants "instrumental in the criminal conduct which was visited upon the victim." Accordingly, pursuant to Supreme Court Rule 615(b)(4) (87 Ill. 2d R. 615(b)(4)), we hereby reduce defendant Mosby's sentence to a term of five years with the Department of Corrections, the maximum sentence for an aggravated battery (Ill. Rev. Stat. 1979, ch. 38, pars. 12—4(e), 1005—8—1(a)(6).

■ In a supplemental brief, defendant Mosby raises the following issues: (1) whether she was denied her sixth amendment right to confront Tate concerning his out-of-court statement and antagonistic testimony; (2) whether she was denied effective assistance of counsel due to a conflict of interest where defense counsel, as attorney for both defendants, could not effectively cross-examine Tate concerning his out-of-court statement and antagonistic testimony; and (3) whether she has waived her sixth amendment right to be represented by effective counsel, untainted by conflict of interest.

Mosby argues that her codefendant Tate was a witness against her because the prosecution elicited statements from him that Mosby fought with the victim. Tate also testified that Mosby beat the victim. Mosby claims that this testimony buttressed the prosecution's case, seriously inculpated her, and partly served as the basis for the court's finding that she was guilty of aggravated battery. It was impossible for defense counsel to cross-examine Tate to protect Mosby's interests because he represented both defendants. Defense counsel had to consent to a *Bruton* violation against Mosby or impeach his other client, Tate.

Mosby contends that where an actual conflict of interest exists, ineffective assistance of counsel will be presumed without a showing of actual prejudice. She further argues that there was no intelligent

and knowing waiver of her right to effective counsel, untainted by conflict of interest, because the record is devoid of any indication that she was ever advised of the conflict.

Defendant Mosby's arguments have no merit. First, we note that these issues were not included in her motion for a new trial. Nevertheless, we shall address the merits of the issues. We have examined the testimony in this case. The testimony of Tate and Mosby is consistent rather than antagonistic. Tate testified, and Mosby admitted, that she fought with the victim and later beat her at the victim's request. There was no antagonistic testimony, no necessity for defense counsel to impeach Tate, and no conflict of interest rendering ineffective defense counsel's representation of Mosby.

Joint representation of codefendants is not, *per se*, unconstitutional. (*People v. Williams* (1981), 94 Ill. App. 3d 241, 250, 418 N.E.2d 840, 847.) A defendant must show an actual conflict of interest manifested at trial in order to prevail in a constitutional claim of ineffective assistance of counsel. (*People v. Berland* (1978), 74 Ill. 2d 286, 299-300, 385 N.E.2d 649, 655.) Defendant Mosby has demonstrated no actual conflict of interest and we reject her claim of ineffective assistance of counsel. We conclude that defendant Mosby was not denied her sixth amendment right to confront witnesses and to effective assistance of counsel.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed as to the convictions, but defendant Mosby's sentence is reduced to five years.

Affirmed as modified.

LINN, P.J., concurs.

JUSTICE ROMITI, concurring in part and dissenting in part:

I agree with the majority that Mosby's conviction should be affirmed but disagree that this is an appropriate case for reduction of sentence.

Certain principles concerning sentences have been so unequivocally stated and so often repeated that they can no longer trigger any serious dispute:

Ordinarily a sentence appealed from is presumed proper (Ill. Rev. Stat. 1979, ch. 38,. par. 1005—5—4.1), and while appellate courts have the *power* to reduce the sentence (87 Ill. 2d R. 615(b)(4)), that power should be exercised with considerable caution. (*People v. Taylor* (1965), 33 Ill. 2d 417, 211 N.E.2d 673.) Sentencing is a matter of dis-

cretion and absent an abuse of that discretion the sentence of the trial court may not be altered on appeal. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 268 N.E.2d 882.) The trial judge is normally in a better position to determine the punishment to be imposed than a court of review. *People v. Butler* (1976), 64 Ill. 2d 485, 356 N.E.2d 330; *People v. Perruquet* (1977), 68 Ill. 2d 149, 154.

A sentence is not excessive simply because it is disparate. In imposing sentence a court is not limited to considering solely the backgrounds of the defendants. The court may consider, among other factors, the degree and character of the participation of each defendant. *People v. Sangster* (1981), 95 Ill. App. 3d 357, 420 N.E.2d 181.

I believe that in reducing Mosby's sentence the majority has failed to follow or apply any of the foregoing principles. A review of the record reveals that the sentence was within statutory limits and that the trial court had an ample basis and reason for sentencing Mosby to a 10-year term:

It was Addie Mosby who met the victim on the street and persuaded her to accompany Mosby to buy marijuana; it was Mosby who made the purchase and who drove the victim to a building which she said she owned; it was Mosby who told the victim to remove her clothes; it was Mosby who repeatedly beat the victim with a whip and with an electric cord; it was Mosby who tied the victim's hands and feet and was the prime mover in shaving the victim's head and who ordered the victim to perform the "various deviate sexual acts" involved.

This evidence starkly establishes the differing degrees of participation by defendant Mosby as compared to Tate and in my opinion clearly and strongly supports the trial court's decision to impose the different and disparate sentence. Since the sentence finds support in the record we should not reduce that sentence simply because we might have imposed some lesser sentence had we been the trial judge. *People v. Perruquet* (1977), 68 Ill. 2d 149, 156.

I would not interfere with the judge's decision and would affirm Mosby's sentence as well as her conviction.