(No. 61537.–

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. RUSSELL FRANKLIN, Appellant.

*Opinion filed January 30, 1987.*

James J. Doherty, Public Defender, of Chicago (Richard E. Gade, Assistant Public Defender, of counsel), for appellant.

Neil F. Hartigan, Attorney General, of Springfield, and Richard M. Daley, State's Attorney, of Chicago (Mark L. Rotert, Assistant Attorney General, of Chicago, and Joan S. Cherry, Thomas V. Gainer, Mary Ellen Dienes, and John J. Mahoney, Assistant State's Attor-

neys, of counsel), for the People.

JUSTICE MILLER delivered the opinion of the court:

Following a bench trial in the circuit court of Cook County, the defendant, Russell Franklin, was convicted of murder and sentenced to 25 years' imprisonment. The appellate court affirmed the conviction in an unpublished order (130 Ill. App. 3d 1157), and we allowed the defendant's petition for leave to appeal.

The murder victim, Theodore Hawkins, was shot and killed in his apartment in Chicago during the evening of June 9, 1982. Three days later, on June 12, the defendant spoke to two Chicago police officers on the street concerning the murder; the defendant was a friend of the victim. The defendant accompanied the officers to Area 2 police headquarters, where he was questioned further by two detectives, O'Rourke and Rowan. The defendant agreed to take a polygraph examination the next day, June 13.

The defendant failed to appear for the scheduled polygraph examination, however, and around 5 o'clock that afternoon Detectives O'Rourke and Rowan went to the defendant's residence. The defendant gave several excuses for missing the appointment, and he went with the detectives to the police station to schedule another test, which was set for the following morning. The detectives questioned the defendant that evening, and they also took him to the victim's apartment. At some point the detectives asked or ordered the defendant to stay at the station overnight. The detectives left the defendant after midnight, and he spent the remainder of the night in an interview room.

The defendant was given the polygraph examination the next morning, June 14. The test was completed around noon, and the defendant was then returned to

the police station where he had previously been held. Sometime after that, the defendant was given *Miranda* warnings and was told that the polygraph results indicated that he was not telling the truth. The defendant was questioned further that afternoon, and he eventually implicated himself in the murder, explaining that the victim was acting in an irrational and violent manner and was shot in a struggle for a gun. Following that statement, the defendant was again taken to the victim's apartment, and later that night the defendant gave a written confession to the crime.

The sole issue in this appeal is whether the defendant's statements should have been suppressed as the fruits of an illegal arrest. (See *Brown v. Illinois* (1975), 422 U.S. 590, 45 L. Ed. 2d 416, 95 S. Ct. 2254; *Wong Sun v. United States* (1963), 371 U.S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407.) In the circuit court the defendant moved to quash his arrest and to suppress his subsequent statements. The trial judge denied the motion, concluding that the defendant voluntarily stayed overnight at the police station and voluntarily submitted to the polygraph examination the next day; the trial judge believed that the defendant's confession was triggered by his being told that he had failed the test. The appellate court affirmed that ruling but relied on a somewhat different basis. The court found that the defendant's detention began the day before the polygraph examination, when he was told to stay overnight at the police station, and that the arrest was not supported by probable cause; the court went on to hold, however, that under *Brown* the defendant's inculpatory statements were sufficiently distinct from his illegal arrest to be free from the initial taint. The court noted that the defendant was advised of his *Miranda* rights on several occasions, that a delay occurred between the initial seizure and the defendant's eventual confession to the crime, that the defendant's

failure of the polygraph test was an intervening circumstance, and that the police misconduct in this case was not flagrant.

The record demonstrates that the defendant received *Miranda* warnings on a number of occasions during his detention; the defendant was advised of his rights both before and after the polygraph examination, and before his inculpatory statements. It may be noted that the trial judge denied a separate motion by the defendant to suppress his statements on the ground that they were coerced, and the defendant has not contested that ruling. The rule is well established, however, that the voluntariness of a defendant's statements does not automatically purge the taint of an illegal arrest and detention. (*Lanier v. South Carolina* (1985), 474 U.S. 25, 26, 88 L. Ed. 2d 23, 25, 106 S. Ct. 297, 298; *People v. Townes* (1982), 91 Ill. 2d 32, 39.) In *Brown* the defendant made inculpatory statements in the wake of an illegal arrest, and the Supreme Court rejected the argument that the giving of *Miranda* warnings necessarily purged the taint. The court explained:

> "The *Miranda* warnings are an important factor, to be sure, in determining whether the confession is obtained by exploitation of an illegal arrest. But they are not the only factor to be considered. The temporal proximity of the arrest and the confession, the presence of intervening circumstances, [citation], and, particularly, the purpose and flagrancy of the official misconduct are all relevant. [Citation.] The voluntariness of the statement is a threshold requirement. [Citation.] And the burden of showing admissibility rests, of course, on the prosecution." (*Brown v. Illinois* (1975), 422 U.S. 590, 603-04, 45 L. Ed. 2d 416, 427, 95 S. Ct. 2254, 2261-62.)

In this case, the appellate court correctly noted that under *Brown* the defendant's statements could not be used as evidence if they were obtained by an exploitation of the invalid arrest rather than by means sufficiently

purged of the taint. Later cases have reaffirmed this view.

In support of the appellate court the State urges several circumstances that it believes operated to attenuate the taint of the defendant's invalid arrest. The State first argues that the polygraph examination was an intervening circumstance that operated to attenuate the taint of the illegal arrest and detention. Sometime after the defendant took the polygraph examination he was told that he had failed it, and he then said that he wanted to tell the truth about the offense. The State argues that the defendant's confrontation with the test results, apparently prompting his confession, was an intervening circumstance that served to attenuate the taint of the invalid arrest. Under this theory, there was no causal connection between the arrest and the defendant's eventual confession to the crime. The State notes also that the defendant freely assented to taking the polygraph test.·

It must be remembered that the polygraph examination was itself a form of interrogation, and therefore the defendant's willingness to submit to it, like the voluntariness of his other statements to the police, cannot alone operate to purge the taint of an illegal arrest and detention. (*Commonwealth v. Barnett* (1977), 471 Pa. 34, 40, 369 A.2d 1180, 1184.) Moreover, the polygraph examination was conducted as a consequence of the illegal detention, and the results themselves were therefore tainted. (See *Taylor v. Alabama* (1982), 457 U.S. 687, 73 L. Ed. 2d 314, 102 S. Ct. 2664.) In this case, then, we do not believe that the polygraph examination was an intervening circumstance that dissipated the taint between the defendant's arrest and his inculpatory statements. (See *People v. Thomas* (1984), 123 Ill. App. 3d 857, 864; *People v. Fox* (1982), 111 Ill. App. 3d 243, 249; see also *Commonwealth v. Barnett* (1977), 471 Pa. 34, 40, 369

A.2d 1180, 1184; *Commonwealth v. Brooks* (1976), 468 Pa. 547, 561, 364 A.2d 652, 658.) Accordingly, the defendant's confrontation with the test results cannot be viewed as independently giving rise to his confession.

The State also contends that the police misconduct was not flagrantly abusive. Although it has been suggested that, in cases involving merely technical violations of the fourth amendment, *Miranda* warnings may, in themselves, be sufficient to dissipate the taint of an unlawful arrest (see *Brown v. Illinois* (1975), 422 U.S. 590, 611-12, 45 L. Ed. 2d 416, 432, 95 S. Ct. 2254, 2265-66 (Powell and Rehnquist, JJ., concurring in part)), the circumstances in this case would not sustain an application of that view. The apparent purpose of the defendant's arrest and detention was to enable the police to conduct an expedition for evidence in the hope that something might turn up, a practice that the Supreme Court has condemned. (See *Alabama v. Taylor* (1982), 457 U.S. 687, 693, 73 L. Ed. 2d 314, 321, 102 S. Ct. 2664, 2668-69; *Dunaway v. New York* (1979), 442 U.S. 200, 218, 60 L. Ed. 2d 824, 839, 99 S. Ct. 2248, 2259-60; *Brown v. Illinois* (1975), 422 U.S. 590, 605, 45 L. Ed. 2d 416, 428, 95 S. Ct. 2254, 2262.) The defendant had missed a previous appointment to submit to a polygraph test, and it appears that he was kept at the police station on the night of June 13 to ensure that he would not miss the rescheduled examination.

The State also argues that the period of time between the defendant's arrest and his confession was not so lengthy that it aggravated the detention nor so brief that it prevented the dissipation of the initial taint. Contrary to the appellate court's holding, we do not believe that the delay between the defendant's arrest and his confession weighs in the State's favor here. The detention was a continuing violation, and its effects were cumulative. Moreover, a large part of the delay in this case

was attributable to the polygraph test. On the evening of June 13, the officers scheduled the test for the earliest available time, the following morning. It was this delay that moved the officers to keep the defendant at the station overnight. In these circumstances the temporal proximity between the arrest and the confession is, without more, ambiguous at best. See *Dunaway v. New York* (1979), 442 U.S. 200, 220, 60 L. Ed. 2d 824, 841, 99 S. Ct. 2248, 2260-61 (Stevens, J., concurring); 3 W. La-Fave, Search and Seizure 633-34 (1978).

In this court the State makes the additional argument that the detention of the defendant was supported by probable cause to believe either that he committed the murder or that he was guilty of obstruction of justice. The State would base the obstruction-of-justice charge on the gradually changing answers the defendant gave to questions concerning the last time he saw the murder victim alive and his acquaintance with another person whom the police wanted to question in their investigation of this case.

The general rule that a prevailing party may raise, in support of a judgment, any reason appearing in the record does not apply when the new theory is inconsistent with the position adopted below or the party has acquiesced in contrary findings. (*People v. Sloan* (1986), 111 Ill. 2d 517, 522; *People v. Keller* (1982), 93 Ill. 2d 432, 438.) We believe that in this case the State's probable-cause argument comes too late, for it directly conflicts with the State's theory at the pretrial hearing. The police officers testified that the defendant was not a suspect in the murder case until sometime on June 14 and that he did not commit any crimes in their presence on June 13. Furthermore, the defendant did not have an opportunity to develop a factual record in opposition to the new theory. There may also be a more fundamental weakness in this argument, for it relies on the defend-

ant's responses to the police officers' questions, and if the defendant's arrest occurred when the police went to his residence late in the afternoon of June 13, then those periods of interrogation must also be viewed as the fruits or products of the illegal detention.

We conclude that the delay between the defendant's arrest and his statements did not weigh in the State's favor, that no circumstances intervened to attenuate the taint of the defendant's unlawful detention, and that the violation in this case was not merely technical. Although the defendant was advised of his *Miranda* rights on several occasions, that alone could not purge the taint of the illegal detention here. The defendant's inculpatory statements should therefore have been suppressed as the fruits of an illegal arrest.

For the reasons given, the judgments of the circuit and appellate courts are reversed, and the cause is remanded to the circuit court of Cook County for a new trial.

*Judgments reversed;*
*cause remanded.*