THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JESSE FRANKLIN, Defendant-Appellant.

First District (4th Division) No. 84—0499

Opinion filed August 13, 1987.

926

JIGANTI, J., dissenting.

Steven Clark and Deborah Liebow, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Thomas Gainer, Jr., Loretta Davenport, and Rachel D. Busch, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE McMORROW delivered the opinion of the court:

After a jury trial, defendant Jesse Franklin was convicted and sentenced to concurrent terms as follows: manufacture of more than 300 grams of phencyclidine (PCP), 15 years; possession of less than 300 grams of PCP, seven years; conspiracy to manufacture PCP, three years; manufacture of piperidinocyclohexanecarbonitrile (PCC), three years; possession of PCC with intent to manufacture PCP, three years; and possession of PCC, three years.

With respect to all of his convictions, defendant argues on appeal that reversal is required because (a) there was no probable cause for the issuance of a search warrant, (b) there was no probable cause for his arrest, (c) he was denied a full and fair hearing on the issues regarding probable cause, and (d) the prosecutor's comments during rebuttal argument served to deny him a fair trial. Defendant also maintains that his conviction of conspiracy to manufacture PCP must be reversed because he was convicted of the principal offense of manufacturing PCP. He contends that his convictions for the possession and manufacture of PCC must be reversed because they violate the prohibition against *ex post facto* laws.

With regard to sentencing, defendant claims that his 15-year sentence for manufacture of more than 300 grams of PCP was excessive and disproportionate to that of a co-offender. He also argues that his seven-year sentence for possession of less than 300 grams of PCP is in excess of the statutory maximum for that offense.

We affirm defendant's conviction for manufacture of more than 300 grams of PCP and reduce his sentence to 10 years. We affirm his conviction for possession of less than 300 grams of PCP and reduce his sentence to five years. We reverse his conviction for conspiracy to manufacture PCP and his convictions for manufacture of PCC, possession of PCC with intent to manufacture PCP, and possession of PCC.

BACKGROUND

Evidence produced below established that defendant, Leon Rayford (Rayford), and Wiley Brooks (Brooks), a chemist and owner of a business selling solutions for diagnostic use in hematology, manufactured PCP and PCC at an apartment in Chicago rented by Rayford. The arrests of defendant, Rayford, and Brooks were the result of a five-month surveillance conducted by agents of the United States Drug Enforcement Administration (DEA).

During this surveillance, agents saw either defendant, Brooks, or Rayford pick up purchases, usually made under the name of Brooks' company, of certain derivative drugs used in the manufacture of PCP and PCC. Defendant, Brooks, or Rayford were also seen transporting these purchases to Rayford's apartment or discarding empty boxes in which the derivative chemicals had been purchased. The location given for Brooks' company had not been used by Brooks for several months, nor rent for the premises been paid.

Based on information received from drug companies regarding the drug purchases of Brooks' company, as well as their own investigation and surveillance, DEA agents obtained a warrant to search the Rayford apartment. Defendant and Brooks were arrested as they were leaving the apartment prior to the agents' search of the premises. As the agents approached the defendant and Brooks, the agents detected the odor of ether coming from both of the men. Defendant and Brooks were arrested and searched. Two packets containing 5.4 grams of PCP were found in defendant's pockets. After being advised of his constitutional rights, defendant stated that the PCP had been given to him by Brooks in exchange for defendant's assistance in the laboratory operation. The DEA agents' subsequent search of the apartment revealed the presence of 1,416 grams of PCP, 708 grams of PCC, and 78 grams of a mixture of PCP and PCC found in various forms.

Defendant was convicted following a jury trial. Brooks pleaded guilty before the trial began. Rayford elected to proceed by way of a simultaneous bench trial. Defendant appeals.

OPINION

I

Defendant challenges all of his convictions on four common grounds. He asserts that a search warrant was obtained by DEA agents without probable cause, that he was arrested without probable cause, and that he was denied a full hearing on the issues of probable

cause. He also claims that certain comments made by the prosecution during rebuttal argument deprived him of a fair trial.

A

■■ ■ With respect to whether the warrant to search Rayford's apartment was issued with probable cause, defendant correctly maintains that the chemicals listed in the complaint are legal substances and that the agents apparently did not see piperidine, cyclohexanone, or bromobenzine, the three major precursors of PCP, taken into the apartment. However, it is the probability of criminal activity, rather than proof beyond a reasonable doubt, that is the standard for determining the existence of probable cause. (*People v. Tisler* (1984), 103 Ill. 2d 226, 236, 469 N.E.2d 147.) Probable cause for the issuance of a search warrant exists if the facts contained in a sworn statement or affidavit presented to the issuing judge would cause a reasonable person to believe that a crime has been committed and that evidence of that crime is in the place to be searched. (*People v. Stewart* (1984), 104 Ill. 2d 463, 476, 473 N.E.2d 1227, *cert. denied* (1985), 471 U.S. 1120, 86 L. Ed. 2d 267, 105 S. Ct. 2368.) The trial court's ruling on a motion to quash a warrant for lack of probable cause will not be overturned on review unless it is manifestly erroneous. *People v. Reynolds* (1983), 94 Ill. 2d 160, 165, 445 N.E.2d 766.

■ Based upon the facts in this record, we cannot say that the trial court's finding of probable cause for the issuance of the warrant was manifestly erroneous. The information before the issuing judge showed that DEA agents were notified by a chemical company that an individual identifying himself as a representative of the Lawrence Goldberg Company placed an order for 1,000 grams of piperidine, a primary precursor in the illicit manufacture of PCP. The agents traced the call-back number to a coin-operated public telephone, then established surveillance and observed defendant, accompanied by Rayford, pick up the order. The agents later learned that Rayford had an extensive criminal background which included four drug arrests.

In the five-month period that followed, the agents were informed by several chemical companies that Brooks Diagnostic, owned by Brooks, was placing orders for various chemicals, some of which were significant in the manufacture of PCP. A check of the address listed for Brooks Diagnostic revealed that Brooks had not been there for the past five months and had not paid rent for those months.

The agents observed defendant and Rayford pick up the chemicals ordered by Brooks Diagnostic on several occasions. In one instance, the chemicals were taken to Rayford's residence in Evanston. On two

other occasions, the agents observed defendant and Rayford take the chemicals to the apartment in Chicago rented by Rayford. An empty bottle labeled bromobenzine, a major precursor of PCP, was found in the alley behind that address. Shortly before the search warrant was requested, the agents detected the odor of ether emanating from Rayford's apartment. The agents had been advised by a DEA forensic chemist that ether is used in the drying stage of manufacturing PCP. Given these circumstances, the trial court's issuance of a search warrant was not manifestly in error.

■ We note that the State contends that the defendant lacked standing to contest the search warrant because he had no possessory or proprietary interest in the apartment searched. Defendant maintains, and we agree, that the State has waived this argument by failing to raise it in the trial court. Because the issue was not presented below, the State deprived defendant of the opportunity to show a possessory interest in the premises. Accordingly, we find the question waived. See *People v. Chianakas* (1983), 114 Ill. App. 3d 496, 502, 448 N.E.2d 620; *cf. People v. Franklin* (1987), 115 Ill. 2d 328, 336, 504 N.E.2d 80.

B

■ Defendant asserts that he was arrested without probable cause. Probable cause to arrest is shown where the facts and circumstances would warrant a person of reasonable caution to believe that an offense has occurred and that the person arrested is guilty of the offense. Ill. Rev. Stat. 1985, ch. 38, par. 107—2(1); *People v. Cabrera* (1987), 116 Ill. 2d 474, 485-86; *People v. Neal* (1985), 111 Ill. 2d 180, 193, 489 N.E.2d 845, *cert. denied* (1986), 476 U.S. 1165, 90 L. Ed. 2d 733, 106 S. Ct. 2292.

■ The record here shows that there was probable cause to arrest the defendant. At the time of his arrest, the police had probable cause to believe that the Chicago apartment rented by Rayford was being used as a clandestine laboratory for the manufacture of PCP. From their surveillance, they knew that defendant was involved in obtaining chemicals for use in the laboratory operation. When the officers detected the odor of ether emanating from the apartment, they clearly had reason to believe that a crime was being committed. The officers confronted defendant and Brooks after the pair left the apartment and began to walk away, and detected the smell of ether coming from both defendant and Brooks. In our view, the agents then had probable cause to believe that defendant had committed a crime.

■ With respect to the PCP found on defendant's person, we

also. note that the police may, incident to a lawful arrest, make contemporaneous search of the person arrested to remove possible weapons and to prevent the person from concealing or destroying evidence. (*People v. Wetherbe* (1984), 122 Ill. App. 3d 654, 658, 462 N.E.2d 1.) For this reason, the search leading to the recovery of the PCP was also permissible.

## C

■ Defendant claims that he was denied a full and fair hearing on the issues of probable cause when the trial court denied his request for a continuance to present certain expert testimony. Defense counsel made an offer of proof that Dr. Fiorese, an expert witness, would have testified that it was not possible to manufacture a controlled substance using only the legal chemicals listed in the complaint for the search warrant. The witness would also have testified that an essential substance which was not listed, carbonitrile, is very dangerous and not easily obtained.

We find no reversible error in the trial court's denial of defendant's request for a continuance. The suspicious circumstances surrounding the large purchases by Brooks' company of certain drugs which were significant precursors of PCP provided probable cause to search Rayford's apartment. These circumstances, when coupled with the smell of ether emanating from the apartment, and from defendant and Brooks when confronted by DEA agents as they left the apartment, supplied probable cause to arrest defendant. The proferred testimony of defendant's expert pertained only to the nature of some of the chemicals used to manufacture PCP and did not mitigate the other surrounding circumstances attending issuance of the search warrant and defendant's arrest. The trial court found, and we agree, that even if the proposed testimony were accepted as true, it would not have altered the outcome of the trial court's probable cause determinations. For this reason, we conclude that defendant was not prejudiced by the denial of his request for a continuance, and no reversible error occurred. See *People v. Rockman* (1986), 144 Ill. App. 3d 801, 809-10, 494 N.E.2d 688; see also *People v. Sanchez* (1986), 115 Ill. 2d 238, 263, 503 N.E.2d 277, *cert. denied* (1987), ___ U.S. ___, 97 L. Ed. 2d 745, 107 S. Ct. 3240.

## D

■ Defendant contends that the prosecutor's comments during rebuttal argument concerning the whereabouts of co-offenders Brooks and Rayford served to deny him a fair trial. The record shows that

defendant failed to return to court after a recess during jury selection, and the trial proceeded in his absence. Brooks pleaded guilty and Rayford proceeded by way of a simultaneous bench trial.

In his closing argument, defense counsel noted that there were a number of people at counsel table when the trial began, but that "everybody is slipping away." An objection to the comment was sustained. During rebuttal argument, the prosecutor stated that he "would love to tell" the jury what had happened to Brooks and Rayford. He further commented that defense "counsel knows I can't tell you, so I won't even go into it." Objections to the prosecutor's remarks were sustained.

A prosecutor is allowed considerable latitude in making his closing argument, and a conviction will not be overturned because of improper argument unless the comments, considered in the context of the argument as a whole, were so prejudicial as to have constituted a material factor in the jury's verdict. (*People v. Davis* (1986), 142 Ill. App. 3d 630, 639, 491 N.E.2d 1285, *cert. denied sub nom. Parker v. Illinois* (1987), ____ U.S. ____, 94 L. Ed. 2d 179, 107 S. Ct. 1327; *People v. Brown* (1983), 113 Ill. App. 3d 625, 631, 447 N.E.2d 1011.) Considered in context here, the prosecutor's remarks were not so prejudicial that they can be said to have influenced the jury's determination of defendant's guilt. The trial court's cautionary instructions to the jury cured any error in the prosecutor's comments. Also, the remarks of defense counsel were intended to cause speculation on the part of the jury. These comments invited the prosecution's response, and defendant cannot complain that he was prejudiced by them. See *People v. Lyles* (1985), 106 Ill. 2d 373, 390, 478 N.E.2d 291, *cert. denied* (1985), 474 U.S. 859, 88 L. Ed. 2d 141, 106 S. Ct. 171.

## II

■■ Defendant next contends, and the State concedes, that his conviction for conspiracy to manufacture PCP must be reversed because he was convicted of the principal offense of manufacturing PCP. (See generally Ill. Rev. Stat. 1985, ch. 38, par. 8—5.) Accordingly, we reverse defendant's conviction for conspiracy to manufacture PCP.

## III

■■ Defendant maintains that his convictions for manufacture of PCC, possession of PCC with intent to manufacture PCP, and possession of PCC violated the constitutional prohibitions against *ex post facto* laws. (U.S. Const., art. I, sec. 9, cl. 3; sec. 10, cl. 1; Ill. Const. 1970, art. I, sec. 16.) Although defendant failed to object at trial or

include the issue in his post-trial motion, we will consider the issue as plain error affecting a substantial right of the defendant. 87 Ill. 2d R. 615 (a); *People v. Whitehead* (1987), 116 Ill. 2d 425, 447-48.

 PCC was first included as a controlled substance in schedule II of the Illinois Controlled Substances Act on September 7, 1979, seven months after defendant's arrest. (Ill. Rev. Stat. 1979, ch. 56½, par. 1206(e)(7)(b).) The State argues that defendant's convictions nevertheless do not violate *ex post facto*. According to the State, PCC fell within the original statutory definition of PCP; when the legislature explicitly added PCC to the schedule of controlled substances in September of 1979, it was merely "clarifying" existing law.

We are unable to accept this argument. The pertinent portion of the Controlled Substances Act which was in effect on the date of the offense included as a controlled substance "any material, compound, mixture, or preparation which contains any quantity" of PCP and "[a]ny substance which contains any quantity of a derivative of barbituric acid, or any salt thereof" of PCP. (Ill. Rev. Stat. 1977, ch. 56½, par. 1208(d)(3)(10).) The record contains no evidence that PCC contains any quantity of PCP. It shows only that PCC is an immediate precursor to PCP which is converted into PCP upon the addition of other chemicals. There is also no evidence that PCC contains "any quantity of a derivative of barbituric acid, or any salt thereof" of PCP. For this reason, we conclude that defendant's convictions for manufacture of PCC, possession of PCC with intent to manufacture PCP, and possession of PCC violate the prohibition against *ex post facto* laws and must be reversed.

## IV

Defendant argues that his 15-year sentence for manufacture of PCP was excessive and disproportionate to that of co-offender Brooks.

At the sentencing hearing, defense counsel argued in mitigation that defendant was a 53-year-old man with a limited education and that his participation in the offense was limited to that of helping co-offender Brooks. Brooks pleaded guilty and received a sentence of six years. In aggravation, the State pointed out that defendant had a 1967 conviction for voluntary manslaughter, for which he received a sentence of 7 to 12 years. In sentencing defendant to a 15-year term, the court stated that it was aware of the disposition regarding Brooks, but noted that Brooks had no prior criminal background. The trial court's decision to impose a 15-year sentence was based primarily on the fact that defendant had been previously convicted of volun-

tary manslaughter.

■■ ■ The trial court is given considerable discretion in determining an appropriate sentence, and its determination will not be reversed on appeal absent an abuse of that discretion. (*People v. Cox* (180), 82 Ill. 2d 268, 280, 412 N.E.2d 541.) Although similarly situated co-offenders should generally be given similar sentences, a disparity in sentences may be supported by such factors as a different degree of participation and prior criminal background. (*People v. Schultz* (1981), 99 Ill. App. 3d 762, 778, 425 N.E.2d 1267.) Nevertheless, where a disparate sentence is clearly excessive, a court of review is empowered to reduce that sentence accordingly. See 87 Ill. 2d R. 615 (b)(4); *People v. Tate* (1984), 122 Ill. App. 3d 660, 668, 462 N.E.2d 662; *People v. Bares* (1981), 97 Ill. App. 3d 728, 738, 423 N.E.2d 538.

■■ When compared with the six-year sentence imposed upon co-offender Brooks, the defendant's sentence of 15 years was excessive and disproportionate. The evidence demonstrated that it was Brooks who was the chemist and presumably the "brains" in the manufacture of the illicit controlled substances. In contrast, defendant had limited education, no shown knowledge or experience in the manufacture of the illicit substances, and participated in the criminal activity essentially by transporting certain licit, derivative components of the controlled substances. Defendant's prior conviction of voluntary manslaughter occurred almost 20 years ago. Given these considerations, we conclude that defendant should not have received a sentence more than twice as lengthy as that of his co-offender Brooks. As a result, we conclude that defendant's sentence should be reduced. Bearing in mind his prior criminal conviction, we modify his sentence for his conviction for the manufacture of more than 300 grams of PCP to a term of 10 years' imprisonment.

## V

■■ Defendant contends, and the State agrees, that defendant's seven-year sentence for possession of less than 300 grams of PCP is in excess of the statutory maximum. We therefore reduce the sentence to five years, the statutory maximum for a Class 3 felony. See Ill. Rev. Stat. 1985, ch. 38, par. 1005—8—1(a)(6); 87 Ill. 2d R. 615(b)(4); *People v. Jordan* (1984), 103 Ill. 2d 192, 215, 469 N.E.2d 569.

■■ Defendant also asserts that he was wrongly convicted of multiple offenses arising from the single act of simultaneous possession. He maintains that, at most, he can be properly convicted of only one act of possession and one act of manufacture. As a result of our

disposition of the previous issues, the only convictions that have not been vacated are the convictions for manufacture of more than 300 grams of PCP and possession of less than 300 grams of PCP. Further discussion of this issue is therefore unnecessary.

■■ Finally, we grant defendant's request that the mittimus be amended to correctly reflect the actual convictions and sentences imposed by the trial court as modified and determined by this court.

CONCLUSION

For the reasons stated, defendant's conviction for manufacture of more than 300 grams of PCP is affirmed and his sentence, as reduced to 10 years, is also affirmed; his conviction for possession of less than 300 grams of PCP is affirmed and the sentence, as reduced to five years, is also affirmed; his conviction for conspiracy is reversed; and his convictions for manufacture of PCC, possession of PCC with intent to manufacture PCP, and possession of PCC are reversed.

Affirmed in part; affirmed as modified in part; and reversed in part.

JOHNSON, J., concurs.

JUSTICE JIGANTI, dissenting:

I respectfully dissent from the majority opinion insofar as it reduces defendant's prison sentence from 15 years to 10 years. It is well established that the trial court is vested with considerable discretion with respect to the appropriate sentence to be imposed. (*People v. Cox* (1980), 82 Ill. 2d 268, 280, 412 N.E.2d 541.) A disparity in sentences given to co-offenders is impermissible only if it is not justified by either a difference of degree in participation or rehabilitative potential. (*People v. Lloyd* (1981), 93 Ill. App. 3d 1018, 1028, 418 N.E.2d 131.) The record reveals that defendant has previously been convicted of the very serious crime of voluntary manslaughter, for which he was sentenced to a prison term of 7 to 12 years. He has now been convicted of crimes resulting from an extensive and deliberate course of criminal conduct with respect to the clandestine laboratory operation. In my view, this shows a serious lack of rehabilitative potential which was properly considered by the trial court and sufficient to support the disparity between defendant's sentence and the sentence given to co-offender Wiley Brooks.